JOANNE ANDERSON *v.* PAUL J. SCHIEFFER ET AL.
(11442)

DUPONT, C. J., and O'CONNELL and SCHALLER, Js.

Argued March 1—decision released June 1, 1994

*Thomas W. Calkins,* with whom was *Mitchell M. Berger,* for the appellants-appellees (defendants).

*Mary Piscatelli Brigham,* with whom, on the brief, was *Jeffrey J. Tinley,* for the appellee-appellant (plaintiff).

SCHALLER, J. The defendants[1] appeal from the judgment of the trial court awarding damages to the plaintiff on counts of failure to pay wages, unjust enrichment and breach of contract, in relation to her supervision of the construction and sale of houses in two subdivisions owned by the defendants. The defendants claim that the trial court improperly (1) failed to grant their motion to dismiss, (2) found that the plaintiff was employed by the defendants as an "on-site residential superintendent or custodian" pursuant to General Statutes § 20-329 (a)[2] and allowed the plaintiff to recover for

---

[1] The defendants are Paul J. Schieffer and Paul J. Schieffer, Inc. Paul J. Schieffer, Inc., was formed in May, 1986.

[2] General Statutes § 20-329 (a) provides in pertinent part: "The provisions of this chapter concerning the licensure of real estate brokers and real estate salesmen shall not apply to any person who as owner or lessor performs any of the acts enumerated in section 20-311, with reference to property owned, leased or sought to be acquired or leased by him, *or to his regular employees who are employed as on-site residential superintendents or custodians,* with respect to the property so owned or leased or sought

services rendered to the defendants, and (3) awarded double damages and attorney's fees. The plaintiff filed a cross appeal, claiming that the trial court improperly (1) awarded only nominal damages for services rendered with regard to four houses that were not complete at the time of her termination, (2) failed to award attorney's fees with respect to her claims concerning the incomplete houses, and (3) denied her motion to open the judgment. We affirm the judgment of the trial court.

The trial court found the following facts. Paul Schieffer owned property in the town of Prospect that was subsequently divided into building lots. The plaintiff, a licensed real estate salesperson, worked for a licensed real estate broker that obtained the listings on various lots owned by the defendants. Although the plaintiff sold several undeveloped lots, she suggested to Schieffer that it might be more profitable for him to develop the land before selling it. Schieffer agreed, and the plaintiff worked with him to choose contractors, to secure buyers, and to close deals.

The parties failed to provide listing agreements for the developed properties, and the real estate broker with whom the plaintiff had previously been associated no longer obtained any commissions on sales. During this period, the plaintiff was a regular employee of the defendants, thus exempting her, pursuant to General Statutes (Rev. to 1985) § 20-329,[3] from certain prereq-

to be acquired or leased when such acts are performed in the regular course of, or as an incident to, the management of such property and the investment therein . . . ." (Emphasis added.)

[3] General Statutes (Rev. to 1985) § 20-329 provides in pertinent part: "This chapter shall not apply to any person who as owner or lessor performs any of the acts enumerated in section 20-311 with reference to property owned, leased or sought to be acquired or leased by him, *or to his regular employees,* with respect to the property so owned or leased or sought to be acquired or leased when such acts are performed in the regular course of, or as an incident to, the management of such property and the investment therein . . . ." (Emphasis added.)

isites to the collection of a commission for the sale of real estate set forth in General Statutes § 20-325a.[4] Despite the plaintiff's exempt status, the parties executed an employment contract on May 21, 1986, in order to avoid any semblance of impropriety.

The employment contract provided, in part, that the plaintiff "is now and has been engaged in the business of managing real estate, including the supervision of construction and hiring of sub-contractors" and that she is to "supervise the construction and sale of houses" for Schieffer. In addition, the contract provided that the relationship "may be terminated by either party hereto, at any time upon notice given to the other; but the rights of the Employee to any commission which accrued prior to said notice, shall not be divested by the termination of this contract." Compensation for the plaintiff was to be calculated upon a commission of 6 percent.

---

[4] General Statutes § 20-325a provides: "(a) No person who is not licensed under the provisions of this chapter, and who was not so licensed at the time he performed the acts or rendered the services for which recovery is sought, shall commence or bring any action in any court of this state, after October 1, 1971, to recover any commission, compensation or other payment in respect of any act done or service rendered by him, the doing or rendering of which is prohibited under the provisions of this chapter except by persons duly licensed under this chapter.

"(b) No person, licensed under the provisions of this chapter, shall commence or bring any action in respect of any acts done or services rendered after October 1, 1971, as set forth in subsection (a), unless such acts or services were rendered pursuant to a contract or authorization from the person for whom such acts were done or services rendered. To satisfy the requirements of this subsection any such contract or authorization shall (1) be in writing, (2) contain the names and addresses of all the parties thereto, (3) show the date on which such contract was entered into or such authorization given, (4) contain the conditions of such contract or authorization and (5) be signed by the owner or an agent authorized to act on behalf of the owner only by a written document executed in the manner provided for conveyances in section 47-5, and by the real estate broker or his authorized agent.

"(c) The provisions of this section shall not apply to any person excepted from the provisions of this chapter by section 20-329 with respect to any acts performed by him which are included in such exception."

The employer-employee relationship terminated on January 13, 1988. At that time, the plaintiff had been involved in the supervision of construction and sale of eight developed lots. By January 13, 1988, the house on lot 80 had been virtually completed and a contract for sale in the amount of $305,000 had been executed. The house on lot 95 lacked only carpeting, and a contract for $227,000 had been executed. That contract, negotiated by the plaintiff, was rescinded and the lot eventually sold for the higher price of $275,000. The plaintiff also obtained contracts for the house on lot 23 for $235,000, and the house on lot 20 for $250,000.

The four other lots contained houses built on speculation. By January 13, 1988, construction of the houses on lots 21, 88, 89, and 90 was 50 percent completed. The plaintiff had not secured any contracts for the sale of these lots.

The trial court determined that the plaintiff was entitled to the entire 6 percent commission on the completed houses for which she had obtained buyers (lots 80, 95, 20 and 23). With regard to lot 95, the trial court computed the commission on the basis of the price in the contract that the plaintiff had secured, rather than the actual, higher sale price. After deducting amounts of money that the plaintiff had received on account of her services, the trial court found that the plaintiff was entitled to $49,020. Pursuant to General Statutes § 31-72,[5] the trial court doubled the damages to $98,040.

With regard to the four incomplete houses built on speculation, the trial court noted that the plaintiff was entitled to payment for the reasonable value of her ser-

---

[5] General Statues § 31-72 provides in pertinent part: "When any employer fails to pay an employee wages in accordance with the provisions of sections 31-71a to 31-71i . . . such employee . . . may recover, in a civil action, twice the full amount of such wages, with costs and such reasonable attorney's fees as may be allowed by the court . . . ."

vices. The trial court determined, however, that it could award only nominal damages because the plaintiff had not presented any evidence of the reasonable value of her services. As a result, the trial court awarded $100 for each house, for a total of $400. The trial court refused to double these damages.

The plaintiff also sought compensation for attorney's fees of two law firms she retained. The trial court stated that the plaintiff was entitled to attorney's fees applicable only to the amount of damages awarded with regard to the four completed houses. While the plaintiff claimed attorney's fees totaling $49,782.35, the trial court concluded that a reasonable award for attorney's fees was approximately 50 percent of the fees, or $24,800.

I

THE DEFENDANTS' APPEAL

A

The defendants first contend that the trial court improperly denied their motion to dismiss for lack of subject matter jurisdiction. The following additional facts are necessary to a resolution of this issue. The defendants filed a motion to dismiss on April 25, 1991, claiming that the plaintiff had failed to allege anywhere in her complaint that she was exempt, pursuant to § 20-329 (a),[6] from certain requirements for the sale of real estate pursuant to § 20-325a.[7] In her complaint, the plaintiff clearly presents facts to support an allegation that she was a regular employee of the defendants. Such regular employment is an exemption pursuant to § 20-329 (a) as it existed prior to October, 1987. The problem arises because the plaintiff did not allege language to satisfy § 20-329 (a) as amended

---

[6] See footnote 2.

[7] See footnote 4.

in October, 1987, by Public Acts 1987, No. 87-319, namely, that she was a regular employee who was an "on-site residential superintendent or custodian." The trial court reserved its decision, and, ultimately, denied the motion in its memorandum of decision.

The defendants conceded in their brief that the proper mechanism for challenging the alleged deficiencies in the complaint was a motion to strike. See *McCutcheon & Burr, Inc.* v. *Berman,* 218 Conn. 512, 526–28, 590 A.2d 438 (1991).[8] The defendants nonetheless assert that the trial court should have considered their motion to dismiss as a motion to strike and then granted the motion to strike. "[A] motion to dismiss is not designed to test the legal sufficiency of a complaint in terms of whether it states a cause of action. That should be done, instead, by a motion to strike; see *Baskin's Appeal from Probate,* 194 Conn. 635, 640, 484 A.2d 934 (1984); the practical difference being that if a motion to strike is granted, the party whose pleading is stricken is given an opportunity to replead in order to avoid a harsh result. Id.; see also Practice Book § 157."[9] *Pratt* v. *Old Saybrook,* 225 Conn. 177, 185, 621 A.2d 1322 (1993).

---

[8] The defendants' original claim in their motion to dismiss, that a failure to comply with General Statutes § 20-325a creates a jurisdictional problem, is unavailing. Our Supreme Court has previously stated that "[i]n asserting that a failure to comply with General Statutes § 20-325a (b) creates a jurisdictional problem, the defendants rely primarily on the portion of the statute that provides: 'No person . . . shall commence or bring any action . . . .' We note that similar language is found in the statute of frauds; General Statutes § 52-550; and in the statute of limitations for tort actions set forth in General Statutes § 52-577. Neither of those statutes creates a jurisdictional bar. See *Seipold* v. *Gibbud,* 110 Conn. 392, 395, 148 A. 328 (1930) (statute of frauds); *Orticelli* v. *Powers,* 197 Conn. 9, 15–16, 495 A.2d 1023 (1985) (§ 52-577)." *McCutcheon & Burr, Inc.* v. *Berman,* supra, 218 Conn. 527 n.16. Similarly, an alleged failure to comply with § 20-325a (a), which also begins by providing that "[n]o person . . . shall commence or bring any action," does not create a jurisdictional bar.

[9] Practice Book § 157 provides: "Within fifteen days after the granting of any motion to strike, the party whose pleading has been stricken may

Had the trial court considered the motion to dismiss as a motion to strike, the plaintiff still would have had the opportunity to plead over to correct any deficiencies pursuant to Practice Book § 157. The plaintiff could have amended the complaint to include facts to support an allegation that she was an "on-site residential superintendent or custodian." Because we conclude that the amendment to § 20-329 (a) concerning "on-site residential superintendents or custodians" was not intended to be applied retroactively, the plaintiff needed to assert only that she was a regular employee of the owner or lessor. These facts were alleged properly in the complaint and found by the trial court.

B

Our discussion now turns to whether the trial court improperly applied the amended provision of § 20-329 (a). The employer-employee relationship began prior to the 1987 amendment to § 20-329 (a), but the trial court applied the amended provision. Public Acts 1987, No. 87-319. As amended, § 20-329 (a) exempts various individuals from real estate licensing requirements. In part, it exempts an owner's or lessor's regular employees who are "on-site residential supervisors or custodians." Pursuant to § 20-325a, those individuals granted exempt status under § 20-329 (a) are also exempt from the provision of § 20-325a, which prohibits unlicensed and certain licensed real estate salespersons from bringing actions to recover commissions earned during real estate transactions. Prior to the enactment of Public Acts 1987, No. 87-319, the exemption provision of § 20-329 (a) referred merely to the regular employees of an owner or lessor. The issue, therefore, is

file a new pleading; provided that in those instances where an entire complaint, counterclaim or cross complaint has been stricken, and the party whose pleading has been so stricken fails to file a new pleading within that fifteen-day period, the court may upon motion enter judgment against said party on said stricken complaint, counterclaim or cross complaint."

whether the plaintiff had to be merely a regular employee or a regular employee who was an on-site residential superintendent or custodian. We must now examine whether the legislature intended the amendment set forth in Public Acts 1987, No. 87-319, to apply retroactively to existing employer-employee relationships.

"Our Supreme Court has consistently expressed reluctance to 'construe statutes retroactively where the statutes [e]ffect substantial changes in the law, *unless the legislative intent clearly and unequivocally appears otherwise.' State* v. *Lizotte,* 200 Conn. 734, 741, 517 A.2d 610 (1986); *Rudewicz* v. *Gagne,* 22 Conn. App. 285, 288, 582 A.2d 463 (1990)." (Emphasis added.) *DeAlmeida* v. *M.C.M. Stamping Corp.* 29 Conn. App. 441, 450, 615 A.2d 1066 (1992). "General Statutes § 55-3 provides that [n]o provision of the general statutes, not previously contained in the statutes of the state, which imposes any new obligation on any person or corporation, shall be construed to have a retrospective effect. The obligations referred to in the statute are those of substantive law; *Nagle* v. *Wood,* 178 Conn. 180, 186, 423 A.2d 875 (1979); and [l]egislation which limits or increases statutory liability has generally been held to be substantive in nature. *Little* v. *Ives,* 158 Conn. 452, 457, 262 A.2d 174 (1969). [W]e have uniformly interpreted § 55-3 as a rule of presumed legislative intent that statutes affecting substantive rights shall apply prospectively only. *Darak* v. *Darak,* 210 Conn. 462, 467, 556 A.2d 145 (1989); *Westport* v. *State,* 204 Conn. 212, 219, 527 A.2d 1177 (1987)." (Internal quotation marks omitted.) *Fulco* v. *Norwich Roman Catholic Diocesan Corp.,* 27 Conn. App. 800, 803–804, 609 A.2d 1034 (1992), appeal dismissed, 226 Conn. 404, 627 A.2d 931 (1993).

On the other hand, "[p]rocedural statutes and rules of practice ordinarily apply 'retroactively to all actions

whether pending or not at the time the statute [or rule] became effective, in the absence of any expressed intent to the contrary.' *Mulrooney* v. *Wambolt,* 215 Conn. 211, 216–17, 575 A.2d 996 (1990); *Citizens Against Pollution Northwest, Inc.* v. *Connecticut Siting Council,* 217 Conn. 143, 151, 584 A.2d 1183 (1991)." *Rosick* v. *Equipment Maintenance & Service, Inc.,* 33 Conn. App. 25, 30, 632 A.2d 1134 (1993). Where an amendment "in effect construes and clarifies a prior statute [it] must be accepted as the legislative declaration of the meaning of the original act. *Tax Commissioner* v. *Estate of Bissell,* 173 Conn. 232, 246, 377 A.2d 305 (1977); *Lee* v. *Board of Education,* 181 Conn. 69, 75, 434 A.2d 333 (1980)." *Shelton* v. *Commissioner of Environmental Protection,* 193 Conn. 506, 514, 479 A.2d 208 (1984). Such a clarifying amendment, thus, would be applied retroactively. In sum, "[u]nless the amendment is procedural in impact, is intended to clarify the original intent of an earlier statute, or specifically contains a provision to the contrary, it is presumed that legislation is intended to operate prospectively. *Mulrooney* v. *Wambolt,* [supra, 215 Conn. 216]; *Board of Education* v. *Freedom of Information Commission,* 210 Conn. 590, 594–95, 566 A.2d 592 (1989); *Darak* v. *Darak,* [supra, 210 Conn. 467–68]." *Caron* v. *Inland Wetlands & Watercourses Commission,* 25 Conn. App. 61, 64, 592 A.2d 964 (1991), aff'd, 222 Conn. 269, 610 A.2d 584 (1992).

We must also examine the language of the amended statute. In analyzing the statutory language, we employ the standard rules of statutory construction. "To determine the collectively expressed legislative intent, we look first to the language of the statute itself. If that language is plain and unambiguous, we go no further. . . . If, however, the statute is ambiguous, e.g., either opaque or susceptible to alternative conflicting interpretations, we will seek guidance from 'extrinsic

aids,' e.g., the legislative history. . . ." (Citations omitted.) *Sanzone* v. *Board of Police Commissioners,* 219 Conn. 179, 187, 592 A.2d 912 (1991).

On its face, the language at issue in § 20-329 (a) clearly concerns substantive, rather than procedural, issues. The amendment narrows the types of employer-employee relationships that provide an employee with an exemption from the requirements of § 30-325a. In addition, the amendment is not an effort to clarify the language of the earlier version of the statute. The legislature did not enact the amendment, for example, in response to conflicting interpretations of the statute by the courts; see *Shelton* v. *Commissioner of Environmental Protection,* supra, 193 Conn. 514–15; but rather, enacted this section to signal a change or break from what was previously codified. We conclude that the legislature, in enacting language that provides a completely different standard for the types of employees who are exempt from the requirements of § 20-325a, did not intend to clarify existing language.

We now address whether the legislature intended to create a retroactive amendment. The issue here is whether the amended statute contains a provision that specifically notes that the amendment is to operate retroactively. There is no clear or unequivocal language on the face of the amendment to the statute that would require retroactive application. See *Aetna Life & Casualty Co.* v. *Braccidiferro,* 34 Conn. App. 833, 849, 643 A.2d 1305 (1994), quoting *Moore* v. *McNamara,* 201 Conn. 16, 22, 513 A.2d 660 (1986) (as rule of construction, legislation to be applied prospectively absent clear intent to contrary). The legislature stated simply that those regular employees who *"are employed as on-site residential supervisors or custodians"* are exempt. Clearly, this provision applies to employer-employee relations entered after the enactment of the amend-

ment. The statute contains no language indicating that the amendment should apply to existing employer-employee relations.

We conclude, therefore, that the legislature did not intend the October, 1987 amendment to § 20-329 (a) to apply to employer-employee relationships already in existence at the time of its passage. As a result, we need not address the defendants' claims that the trial court improperly found that the plaintiff was an "on-site residential superintendent or custodian."

## C

The defendants' final claim concerns the trial court's award of double damages and attorneys' fees pursuant to General Statutes § 31-72.[10] Section 31-72 "provides for a discretionary award of double damages, with costs and reasonable attorney's fees, to employees who are successful in actions against their employers for wages due." *Crowther* v. *Gerber Garment Technology, Inc.,* 8 Conn. App. 254, 264, 513 A.2d 144 (1986). Our Supreme Court previously has held that such awards for double damages are "inappropriate in the absence of the trial court's finding of bad faith, arbitrariness or unreasonableness. . . ." (Citations omitted, internal quotation marks omitted.) *Sansone* v. *Clifford,* 219 Conn. 217, 229, 592 A.2d 931 (1991).

The trial court made an explicit finding that the defendants' "failure to pay with respect to the *four completed properties* demonstrated bad faith, arbitrariness and unreasonableness." (Emphasis added.) The trial court's finding was based on more than the mere breach of contract. See *Crowther* v. *Gerber Garment Technology, Inc.,* supra, 8 Conn. App. 264. The court stated that the amount of compensation due the plaintiff was readily "liquidated by application of simple arithmetic

---

[10] See footnote 5.

and there was no justification for withholding her commission." We conclude that the trial court did not abuse its discretion in awarding double damages pursuant to § 31-72.

## II

### THE PLAINTIFF'S CROSS APPEAL

### A

The plaintiff first claims that the trial court improperly awarded only nominal damages for the work that she performed on the four uncompleted houses. The plaintiff claimed at trial that, because these houses were 50 percent completed, she was entitled to one half of the agreed upon 6 percent commission, namely a 6 percent commission on each house.

"It is axiomatic that the burden of proving damages is on the party claiming them. . . . When damages are claimed they are an essential element of the plaintiff's proof and must be proved with reasonable certainty. . . . Damages are recoverable only to the extent that the evidence affords a sufficient basis for estimating their amount in money with reasonable certainty. . . ." (Citations omitted; internal quotation marks omitted.) *Expressway Associates II* v. *Friendly Ice Cream Corp. of Connecticut,* 218 Conn. 474, 476–77, 590 A.2d 431 (1991).

The trial court found that the plaintiff had supervised the construction on these lots, and that the plaintiff was entitled to the reasonable value of her services with regard to the uncompleted houses, but noted that the plaintiff had not presented any evidence with regard to the value of her services. Our independent review of the record indicates likewise. Because the plaintiff failed to provide the trial court with a sufficient basis for determining the amount of damages owed to her, the trial court's conclusion on this issue was correct.

B

The plaintiff next claims that the trial court improperly calculated the award of attorney's fees. The plaintiff presented evidence that she had employed two different law firms, the bills of which totaled $49,782.36. In its memorandum of decision, the trial court stated that "[t]he plaintiff is only entitled to an award of fees applicable to the amount doubled, and not to the balance." The "balance" would have included the damages awarded on the four uncompleted houses. The trial court thus awarded attorney's fees with regard to the claims involving the four completed houses, but not the four uncompleted houses.

Section 31-72 provides that the court may award "reasonable attorney's fees." "[I]n an action for wages brought pursuant to General Statutes § 31-72, awards for double damages *and attorney's fees* are inappropriate in the absence of the trial court's finding of bad faith, arbitrariness or unreasonableness. . . ." (Citations omitted; emphasis added; internal quotation marks omitted.) *Sansone* v. *Clifford,* supra, 219 Conn. 229. The trial court found that, with regard to the four uncompleted houses, it could "make no such finding" that the defendants' failure to pay demonstrated bad faith, arbitrariness and unreasonableness. We conclude that the trial court properly declined to award attorney's fees related to those houses.

C

The plaintiff contends, finally, that the trial court improperly failed to grant her motion to open the judgment. In her motion to open the judgment, the plaintiff requested that the trial court award (1) interest, (2) full attorney's fees based on her total claim for damages, and (3) an amount equivalent to the reasonable value of her services on the four incomplete houses.

Since we have already addressed the issues of attorney's fees and nominal damages, we examine the motion to open the judgment with regard only to interest.

"A motion to open and vacate a judgment filed during the four months after which judgment was rendered is addressed to the court's discretion, and the action of the trial court will not be disturbed on appeal unless it acted unreasonably and in clear abuse of its discretion. See *Manchester State Bank* v. *Reale,* 172 Conn. 520, 523–24, 375 A.2d 1009 (1979); *State* v. *Fahey,* 147 Conn. 13, 15, 156 A.2d 463 (1959). In determining whether the trial court abused its discretion, this court must make every reasonable presumption in favor of its action. *State* v. *Bitting,* 162 Conn. 1, 11, 291 A.2d 240 (1971); *E. M. Loew's Enterprises, Inc.* v. *Surabian,* 146 Conn. 608, 612, 153 A.2d 463 (1959). *Celanese Fiber, Division of Celanese of Canada, Ltd.* v. *Pic Yarns, Inc.,* [184 Conn. 461, 466–67, 440 A.2d 159 (1981)]. *Acheson* v. *White,* 195 Conn. 211, 214–15, 487 A.2d 197 (1985)." (Internal quotation marks omitted.) *Crozier* v. *Zaboori,* 14 Conn. App. 457, 461, 541 A.2d 531 (1988).

The trial court denied the motion to open without explanation. "The burden of securing an adequate record for appellate review of an issue presented on a cross appeal rests with the cross appellant. *Niles* v. *Niles,* 9 Conn. App. 240, 249, 318 A.2d 932 (1986). The plaintiff in this case did not seek to have the trial court articulate its decision pursuant to Practice Book § 4051. . . ." *Goold* v. *Goold,* 11 Conn. App. 268, 285, 527 A.2d 696, cert. denied, 204 Conn. 810, 528 A.2d 1156 (1987). As a result, we cannot ascertain why the trial court denied the motion to open. In view of the inadequate record, we decline to review this claim.

The judgment is affirmed.

In this opinion the other judges concurred.