[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM RE: MOTION FOR ENTRY OF JUDGMENT
This case involves an attempt by the plaintiff, Oswald G. Rapin d/b/a Country Real Estate, to collect a real estate commission regarding the sale of a residence owned by the defendant, Cynthia Nettleton. On February 1, 1996, this matter was heard by attorney trial referee, John w. Pickard, whose findings of fact are summarized below. CT Page 1674
On February 25, 1992, the defendant entered into a written Exclusive Right to Sell Listing with the plaintiff with respect to the sale of the defendant's house at 208 Tuttle Road in Woodbury, Connecticut, at a price of $1,740,000 for a term of six months. Pursuant to that agreement, the defendant agreed to pay the plaintiff a commission of 6% if during the term of the listing agreement the property was sold, anyone found a buyer willing or able to buy the property at a price acceptable to the defendant, or anyone obtained a binding enforceable agreement between the defendant and a buyer.
The defendant acquired the property jointly with her husband, Thomas Nettleton. Sometime after the purchase, Thomas Nettleton conveyed his interest in the property to his wife for no consideration. The defendant relied on her husband, an experienced real estate developer, in the negotiation, listing and sale of the property, and he negotiated the terms of the listing agreement with the plaintiff. Mr. Nettleton freely used the equity in the property for his business purposes including three separate mortgages to American sank. During the term of the listing agreement, the plaintiff listed the property in the multiple listing service, advertised it, and showed the property to several prospective purchasers. There were, however, no offers to purchase the property accepted by the defendant during the original listing period.
Shortly before the expiration of the listing period, the plaintiff had discussions with the defendant's husband in which he said that his wife would extend the listing agreement. The defendant's husband told the plaintiff to send the extension agreement to them for signature and also that they might reduce the asking price. The defendant prepared a listing agreement extension known as a "Change Authorization," signed it and sent it to the defendant. The defendant's husband received the change authorization, filled in the listing price to reflect a reduction from $1,740,000 to $1,470,000, signed his wife's name to the listing agreement and mailed it back to the plaintiff. When signing his wife's name on the change authorization the defendant's husband had oral authorization to act on her behalf. The defendant was in agreement with extending the listing with the plaintiff and believed that her husband had effectively extended the listing by signing her name on the change authorization. The plaintiff believed that the defendant had signed the change authorization. The change authorization extended the listing agreement until midnight, February 24, 1993. During the effective period of the CT Page 1675 change authorization, neither the defendant or her husband attempted to repudiate the authority of the plaintiff to act as broker on the defendant's behalf.
In December of 1992, American bank was foreclosing on one or more of the mortgages on the defendant's property. That same month, the defendant's husband called Arminda Murtha (Murtha), who previously expressed an interest in the property, to say that his wife would sell the property for $850,000. A contract was prepared in late December of 1992 and called for a closing on January 29, 1993, with occupancy to be given to Murtha on March 1, 1993. This contract was never signed by Murtha or the defendant. In early January of 1993 a second contract was prepared, which was identical to the first contract in all respects except it called for a closing on March 1, 1993. Murtha signed the second contract on January 9, 1993 and sent a deposit check for $10,000. When the plaintiff heard about the possible sale to Murtha, he talked with the defendant's husband and reminded him that he would be owed a commission if the property were sold to Murtha. The defendant's husband told the plaintiff that a sale at $850,000 would not be sufficient to pay the plaintiff a commission. Both parties agreed that they would need to talk about this issue further. On January 12, 1993, the plaintiff sent a letter to the defendant confirming that her husband had informed the plaintiff that she was about to finalize a contract with Murtha. The letter also stated that he would ". . . like to be assured that Country Real Estate['s] commission will be taken into consideration, as per our listing agreement. Obviously, I would be willing to negotiate the amount of the commission." The plaintiff did not speak to the defendant or her husband after the letter.
The defendant would have signed the contract with Murtha in mid January of 1993 except for the receipt the plaintiff's demand for a commission, which the defendant and her husband did not want to pay. They did not attempt to negotiate with the plaintiff to reduce his commission. On February 1, 1993, the defendant's attorney returned the $10,000 deposit check to Murtha's attorney. The plaintiff believed that the sale to Murtha had not taken place and that the property was still on the market. He continued his efforts to sell the property.
On March 1, 1993, the defendant sold the property to Murtha for $850,000, although the nominal price shown on the conveyance tax forms was $1,050,000. Until the day of the closing, Murtha was unaware that the $10,000 deposit had been returned to her attorney. CT Page 1676 At the closing on March 1, Murtha signed a new contract which was identical to the original contract which she signed on January 9, 1993, except that the "Balance at Closing" was increased from $840,000 to $850,000 to reflect the $10,000 deposit that had been returned.
On February 23, 1993, the plaintiff received a facsimile from another real estate agent indicating that he had a client who had agreed in principle to purchase the property for $1,025,000. Immediately upon receipt, the plaintiff sent by facsimile the "offer" to the defendant's husband. The plaintiff attempted to call the defendant's husband about the facsimile, but did not receive a return call. The defendant never became aware of the "offer." In order to pay all the closing expenses and to obtain releases of the three mortgages to American Bank, the defendant and her husband provided additional funds at the closing in the amount of $11,088.15. On or about April 15, 1993, the plaintiff made demand on the defendant for payment of his commission of 6% of the purchase price of $850,000. The plaintiff's attorney's fees and costs for prosecution of this action through January 31, 1996 were $12,500, which charges are reasonable.
The attorney trial referee concluded that the factual findings and conclusions support the plaintiff's claim for a commission in all respects but one. The change authorization on extending the listing was not "signed by the owner of the real estate or by an agent authorized to act on behalf of such owner pursuant to a written document executed in the manner provided for conveyances in Section 47-5" as required by General Statutes § 20-325a(b).
On July 3, 1996, the plaintiff filed this motion for entry of judgment in favor of the plaintiff in accordance with the report of the attorney trial referee. The plaintiff presents five arguments as to why, based on the facts found by the attorney trial referee, the plaintiff is entitled to judgment as a matter of law notwithstanding the execution of the defendant's name to the change authorization by her husband. First, the plaintiff argues that he is entitled to recover pursuant to General Statute § 20-325a(b) and (c), which has been held to apply retroactively to claims for real estate commissions. Secondly, the execution of the change authorization by the defendant's husband bound the defendant to pay the commission sought due to her subsequent ratification. Third, the recent Supreme Court decision in M. R. Wachob Co., Inc. v. MBMPartnership, 232 Conn. 645, 656 A.2d 1036 (1995), mandates that the plaintiff is entitled to his commission. Fourth, a finding that CT Page 1677 the listing agreement is enforceable would be in accord with current Connecticut law as set forth in Habetz v. Condon,224 Conn. 231, 618 A.2d 501 (1992). Lastly, the plaintiff argues that on the facts found by the attorney trial referee, the defendant is equitably estopped from claiming § 20-325a(b) as a defense to the plaintiff's claim. The plaintiff also argues that if judgment is entered in favor of the plaintiff, it should include the commission, attorney's fees and interest.
"Attorney trial referees are empowered to hear and decide issues of fact. Spears v. Kears Realty Co., 171 Conn. 699,702-703, 372 A.2d 121 (1976). It is axiomatic that a "reviewing authority may not substitute its findings for those of the trier of the facts." Wilcox Trucking, Inc. v. Mansour Builders, Inc.,20 Conn. App. 420, 423, 567 A.2d 1250 (1989), cert. denied,214 Conn. 804, 573 A.2d 318 (1990). The trial court, as the reviewing authority, may render whatever judgment appropriately follows, as a matter of law, from the facts found by the attorney trial referee. Dills v. Enfield, 210 Conn. 705, 713, 557 A.2d 517
(1989). In reviewing an attorney trial referee's report, a trial court cannot find additional facts or reject others unless a material fact has been found without evidence. Id., 714." Romanov. City of Derby, 42 Conn. App. 624, 681 A.2d 387 (1996).
Before addressing the plaintiff's arguments, this court notes that although the contract between the defendant and Murtha was not signed until March 1, 1993, after the listing had expired on February 24, Murtha accepted the defendant's offer in December of 1992 when she agreed to pay $850,000 for the property. The sale was put on hold when the defendant's husband learned that the plaintiff would be demanding a commission, but it is clear that the sale was never truly off. Murtha never even knew that her deposit had been returned and that there was a hold. Accordingly, the offer was accepted during the listing extension even though the contract was not signed until after the listing extension had expired.
 I
General Statutes § 20-325a(b), at the time, stated, in relevant part, that:
 "No person licensed under the provisions of this chapter, shall commence or bring any action [for recovery of commission] . . . CT Page 1678 unless such acts or services were rendered pursuant to a contract or authorization . . . To satisfy the requirements of this subsection any such contract or authorization shall . . . be signed by the owner or an agent authorized to act on behalf of the owner only by a written document executed in the manner provided for conveyances in section 47-5, and by the real estate broker or his authorized agent."
The plaintiff argues that § 20-325a(b) should be applied as it currently appears. Subsection (b)(7) was added by Public Act 94-240. It stated that "if the acts done or services rendered involvea listing contract for the sale of real estate, be signed by theowner of the property or an agent authorized to act on behalf of such owner, pursuant to a written document executed in the manner provided for conveyances in section 47-5 . . ." The italicized language was amended by Public Act 95-164 to read "be signed by the person or persons for whom the acts were done or services rendered." The plaintiff argues that application of the current language of subsection (b)(7) does not require the owner of the property to sign the listing agreement, and that the facts found by the attorney trial referee show that the plaintiff performed services for the defendant's husband, who signed the change authorization.
The plaintiff contends that the above mentioned public acts should be applied retrospectively. To support this proposition the defendant relies on Coldwell Banker v. Ward, Superior Court, judicial district of Waterbury, Docket No. 122435 (15 Conn. L. Rptr. 273, October 17, 1995, McDonald, J.), which held thatPublic Act 94-240 is applied retrospectively because it merely clarified the pre-existing version of General Statutes § 20-325a.
In determining whether or not a statute is to be given retrospective application, our Supreme Court has employed the following test: "Our point of departure is General Statutes §55-3, which states: `No provision of the general statutes of the state, which imposes any new obligation on any person or corporation, shall be construed to have retrospective effect.' The `obligations' referred to in the statute are those of substantive law . . . Thus, we have uniformly interpreted § 55-3 as a rule of presumed legislative intent that statutes affecting substantive rights shall apply prospectively only . . . The Legislature only CT Page 1679 rebuts this presumption when it clearly and unequivocally expresses its intent that the legislation shall apply retrospectively." Ricev. Vermilyn Brown, Inc., 232 Conn. 780, 786, 657 A.2d 616 (1995), quoting Darak v. Darak, 210 Conn. 462, 467-68, 556 A.2d 145 (1989).
"Our Supreme Court has consistently expressed reluctance to construe statutes retroactively where the statutes [e]ffect substantial changes in the law, unless the legislative intent clearly and unequivocally appears otherwise . . . The obligations referred to in the statute are those of substantive law; . . . and legislation which limits or increases statutory liability has generally been held to be substantive in nature. We have uniformly interpreted § 55-3 as a rule of presumed legislative intent that statutes affecting substantive rights shall apply prospectively only." (Citations omitted; internal quotation marks omitted.)Anderson v. Schieffer, 35 Conn. App. 31, 39, 645 A.2d 549 (1994).
"On the other hand, procedural statutes and rules of practice ordinarily apply retroactively to all actions whether pending or not at the time the statute [or rule] became effective, in the absence of any expressed intent to the contrary." Anderson v.Schieffer, supra, 35 Conn. App. 39-40. "An act that has been passed to clarify an existing statute, that is, one that was passed shortly after controversies arose as to the judicial interpretation of the original act, is also to be applied retroactively."Rudewicz v. Gagne, 22 Conn. App. 285, 288, 582 A.2d 463 (1990).
"An amendment which in effect construes and clarifies a prior statute must be accepted as the legislative declaration of the meaning of the original act . . . An amendment that is intended to clarify the original intent of an earlier statute necessarily has retroactive effect." (Citations omitted; internal quotation marks omitted). State v. State Employees' Review Board, 239 Conn. 638,648-49, ___ A.2d ___ (1997). "To determine whether an act should be characterized as clarifying legislation, [courts must] look to the legislative history to determine the legislative intent." Id., 649.
This court notes that in Jackson v. Vaill, Superior Court, judicial district of Litchfield, Docket No. 068694 (November 26, 1996, Sheldon, J.), Judge Sheldon held that Public Act 94-240
cannot be applied retrospectively. A determination of the retroactive nature of Public Act 94-240 is not necessary for this court to reach its conclusion. Assuming arguendo thatPublic Act 94-240 is retroactive, Public Act 95-164 would also have to be CT Page 1680 applied retroactively in order to assist the plaintiff. There is nothing in the legislative history to Public Act 95-164 to support the proposition that this was a clarifying amendment. Thus,Public Act 95-164 is not applied retroactively, and, therefore, the contract or authorization needed to be signed by the owner of the property.
 II
The plaintiff argues that even though no written document, executed in the manner provided for conveyances in General Statutes § 47-5, exists authorizing the defendant's husband to act as her agent, General Statutes § 20-325a(b) is complied with because the defendant ratified her husband's conduct.
Section 20-325a(b) provides that for an agency relationship to exist there must be a written document executed in the manner provided for conveyances in General Statutes § 47-5.
General Statutes § 47-5 states, in pertinent part, that:
 "All of land shall be: (1) in writing; (2) if the grantor is a natural person, subscribed, with or without seal, by the grantor with his own hand or with his mark with his name annexed to it or by his attorney authorized for that purpose by a power executed, acknowledged and witnessed in the manner provided for conveyances . . . (3) acknowledged by the grantor, his attorney or such duly authorized person to be his free act and deed; and (4) attested to by two witnesses with their own hands."
When the written document authorizing the agent does not meet the requirements of § 47-5, Connecticut courts have examined whether the agent's conduct was subsequently ratified by the principal. See William T. Beazley Co., Realtors v. Business ParkAssociates, Inc., Superior Court, judicial district of New London at New London, Docket No. 523977 (7 CSCR 1360, November 6, 1992, Teller, J.) (holding that a corporation may become bound to a listing agreement, despite its agent's lack of authority, by a subsequent ratification of the agreement); Coldwell Bankers v.Calabrese Development Corp., Superior Court, judicial district of Waterbury, Docket No. 101887 (7 CSCR 341, January 23, 1992, CT Page 1681 Langenbach, J.) (finding that even if person who signed the listing agreement was not duly authorized to act on the owner's behalf, the plaintiff sufficiently alleged ratification by claiming that the defendant's affirmed the act by paying a portion of the commission).
"Ratification is defined as the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account . . . Ratification requires acceptance of the results of the act with an intent to ratify, and with full knowledge of all the material circumstances." CMG Realty ofConnecticut, Inc. v. Colonnade One, 36 Conn. App. 653, 659,653 A.2d 207 (1995), quoting Russel v. Dean Witter Reynolds, Inc.,200 Conn. 172, 185, 510 A.2d 972 (1986). "The acceptance of the results of the act with the intent to ratify and with full knowledge of all of the material circumstances is ratification."Hartford Accident Indemnity Co. v. Windsor Bank, 171 Conn. 63,72 368 A.2d 76 (1976). Ratification can be established if the principal fails to repudiate the agents acts. See 1 Restatement (Second), Agency § 98 (1958).
The facts found by the attorney trial referee establish that the defendant, pursuant to the above definition, ratified her husband's actions. The facts show that the defendant relied on her husband in the negotiation, listing and sales of the property. The terms of the listing agreement with the plaintiff were negotiated by the defendant's husband. Shortly before the expiration of the original listing agreement the plaintiff had discussions with the defendant's husband in which he said that the defendant would extend the listing agreement with the plaintiff. When the defendant's husband signed the defendant's name on the change authorization he had oral authority to do so. The defendant was in agreement with extending the listing agreement with the plaintiff and believed that her husband had effectively extended the listing agreement by signing her name to the change authorization. Neither the defendant or her husband attempted to repudiate the authority of the plaintiff to act as broker on the defendant's behalf. These facts clearly show that the defendant was fully aware of the circumstances and in fact intended to ratify her husband action. Moreover, since the defendant knew that her husband had signed her name, she had the opportunity to repudiate the plaintiff's authority but chose not to do so. She wanted to extend the listing agreement and believed that her husband's signature achieved that result. CT Page 1682
The defendant's subsequent ratification of her husbands actions establishes an agency relationship between the defendant and her husband. The defendant's husband was acting as the defendant's agent when he signed the change authorization; thus, the provisions of § 20-325a are satisfied.
Because judgment can be entered in favor of the plaintiff based on the defendant's ratification, this court will not address the plaintiff's remaining three arguments.
For the foregoing reasons, the plaintiff's motion for entry of judgment in favor of the plaintiff in accordance with the report of the attorney trial referee of June 17, 1996, is granted. Furthermore, pursuant to the listing agreement the plaintiff is entitled to his commission of 6% on the sale of the property, which amounts to $51,000, and his reasonable attorney's fees, as found by the attorney trial referee, of $12,500.
HON. WALTER M. PICKETT,State Judge Referee