[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM FILED MAY 14, 1997
Presently before the court are two motions for summary judgment. On September 11, 1996, Keystone filed a motion for summary judgment accompanied by a memorandum of law and two exhibits. On November 15, 1996, Wozniak filed an objection and cross-motion for summary judgment.
The present case involves an insured's claim for underinsured motorist benefits. On July 19, 1995, Maureen Wozniak, the CT Page 5029 plaintiff, filed a complaint, alleging a right to recover underinsured motorist benefits from the defendant, Keystone Insurance Company, pursuant to a policy issued to her by Keystone. The complaint further alleges that on January 11, 1994, Wozniak was operating her automobile when Jesse Ullman struck Wozniak's vehicle from behind. Wozniak alleges that Ullman's vehicle was underinsured as defined by the policy issued to her by Keystone. Wozniak further alleges that the collision was due to the negligence of Ullman in a variety of ways and that, as a result, she has suffered severe damages. Wozniak alleges that she notified Keystone of the accident and of her claim pursuant to the policy, but that Keystone has refused to fairly and adequately compensate her pursuant to the policy.
Keystone filed an answer on September 19, 1995, denying the material allegations of the complaint. By way of special defense, Keystone asserts that: 1) it is entitled to a set-off and reduction in the amount of $100,000 for the monies paid to Wozniak by Ullman; 2) it is entitled to a setoff and reduction from coverage for monies paid to Wozniak for basic or added reparation, if unreimbursed, pursuant to the policy: 3) Keystone further claims that Wozniak's recovery shall not exceed the policy's uninsured motorist limits less applicable set-offs and reductions. Wozniak filed a reply to the special defense on September 20, 1995, wherein she denied the allegations.
Keystone moves for summary judgment on the ground that Wozniak is prohibited as a matter of law from recovering under the coverage limit of the policy covering Wozniak's automobile because the "putative `fault vehicle' was underinsured." Keystone maintains that the coverage of the "fault vehicle" equals the underinsured motorist coverage on Wozniak's vehicle because the accident occurred after the legislative abolition of "stacking." Keystone relies on P.A. 93-297 as authority for this proposition.
Wozniak argues that Ullman's automobile was underinsured, and that P.A. 93-297 is inapplicable because the vehicle was covered by a policy that was issued prior to the effective date of P.A. 93-297 and had yet to be renewed. In determining whether the car was underinsured, Wozniak argues that Ullman's single limit should be compared against the sum of the uninsured motorist coverage applicable to each vehicle covered under Wozniak's single policy. Wozniak argues that, in the present case, her policy covers two vehicles in the amount of $100,000, for a total of $200,000 which exceeds Ullman's single policy limit, and thus, CT Page 5030 qualifies Ullman's vehicle as underinsured.
"The application of 38a-336 requires two distinct steps: (1) determining whether a vehicle is in fact underinsured, so that coverage is available; and (2) calculating the amount of the actual award due the victim." Covenant Ins. Co. v. Coon,220 Conn. 30, 36. "Thus, in making the initial determination whether a [tortfeasor's] vehicle is underinsured, 38a-336 clearly states that the aggregate of the liability limits under all of the tortfeasor's policies are to be compared with the uninsured motorist coverage limit of the policy against which a claim is made. The statute unequivocally refers to the liability provisions in the plural but the uninsured motorist provisions in the singular. Consequently, the analysis directed by 38a-336
requires a comparison between the aggregate of [the tortfeasor's] liability limits available to the victim against the underinsured motorist limits in each single policy against which the victim has a claim." (Emphasis omitted: footnote omitted.) Id.,220 Conn. 35-36.[1]
There are two issues presented here. The first is whether intra-policy stacking was permitted in making the initial determination of whether a motor vehicle is underinsured prior to P.A. 93-297 and what effect its enactment had on an insured's ability to "stack." The second is whether the legislature intended P.A. 93-297 to apply to acts or omissions occurring under a policy that has been issued before the enactment date and still in effect at the time of the accident.
There are two types of "stacking": inter-policy and intra-policy. Inter-policy "[s]tacking refers to the ability of the insured, when covered by more than one insurance policy, to obtain benefits from a second policy on the same claim when recovery from the first policy alone would be inadequate." Nestorv. Travelers Indemnity Company, 41 Conn. App. 625, 627 n. 2, cert. denied, 239 Conn. 903. The Supreme Court has held that inter-policy stacking is not allowed to determine "whether a torffeasor's vehicle is underinsured." Covenant Ins. Co. v. Coon,supra, 220 Conn. 36.
"Intra-policy stacking is the aggregation of the limits of liability for underinsured-motorist protection of each car covered in one policy . . ." Allstate Ins. Co. v. Link,35 Conn. App. 338, 343 n. 5. The Supreme Court has held that intra-policy stacking is allowed in determining whether the CT Page 5031 tortfeasor's vehicle is underinsured. See Nationwide Ins. Co. v.Gode, 187 Conn. 386, 394-97, rev'd on other grounds, CovenantIns. Co. v. Coon, supra, 220 Conn. 36 n. 6. (intra-policy stacking is consistent with the statutory definition in § 38a-336 (e) and protects the reasonable expectations of the insured who pays a double premium and expects double coverage). See also Kent v.Middlesex Mutual Assurance Co., 226 Conn. 427, 432, (allowing intrapolicy stacking); Farm City Ins. Co. v. Stevens,215 Conn. 157, 161, (same). "Stacking is a judicially adopted doctrine, never expressly mandated by our legislature . . . Thus, although Connecticut has had a long history of stacking . . . the aggregation of uninsured and underinsured motorist coverage, while not prohibited by the legislature prior to the enactment of P.A. 93-297, has never been explicitly approved by the legislature." (Citations omitted.) Lash v. Aetna Casualty Surety Co., 236 Conn. 318, 327 n. 12. Accordingly, prior to P.A. 93-297 intra-policy "stacking" was permitted.
Public Acts 1993, No. 93-297 § 1(d), now codified as General Statutes § 38a-336 (d), provides: "Regardless of the number of policies issued, vehicles or premiums shown on a policy, premiums paid, persons covered, vehicles involved in an accident, or claims made, in no event shall the limit of liability for uninsured and underinsured motorist coverage applicable to two or more motor vehicles covered under the same or separate policies be added together to determine the limit of liability for such coverage available to an injured person or persons for any one accident." The Supreme Court emphasized that "[P.A. 93-297] . . . eliminated stacking of underinsurance coverage for all purposes." Lash v. Aetna Casualty Surety Co.,supra, 236 Conn. 327. Accordingly, P.A. 93-297 abolished the use of stacking in making the initial determination of whether a motor vehicle is underinsured.
The next question is whether P.A. 93-297 governs policies issued before the enactment date covering accidents occurring after the enactment date. Keystone argues that the elimination of stacking applies to acts or omissions occurring on or after January 1, 1994, even if the policy covering the accident was in effect prior to this date. Keystone relies on P.A. 93-297, § 29 for this proposition. In response, Wozniak argues that P.A. 93-297 does not apply to the present case because the policy covering the accident was issued prior to the date of the enactment of P.A. 93-297 and was still in force when the accident occurred. As authority, Wozniak relies on the legislative history CT Page 5032 of P.A. 93-297, the case of Patriot Gen. Ins. Co. v. Normandie,
Superior Court, judicial district of Hartford-New Britain, at New Britain, Docket No. 463778 (May 11, 1995) (Handy, J.) (14 CONN. L. RPTR. 311, 1 Conn. Opp. 656), rev'd on other grounds,41 Conn. App. 66, 674 A.2d 861 (1996), and on Bulletin PC-20, Part I,Conn. Bulletins (September 28, 1993), which is the insurance commissioner's interpretation of the effect of P.A. 93-297.
"[The Supreme Court] consistently [has] expressed reluctance to construe statutes retroactively where the statutes affect substantial changes in the law, unless the legislative intent clearly and unequivocally appears otherwise . . ." (Citation omitted; internal quotation marks omitted.) Gil v. CourthouseOne, 239 Conn. 676, 686. "[The Supreme Court] presume[s] that the legislature [was] mindful of judicial construction relevant to . . . legislation it enact[ed] . . ." (Citations omitted; internal quotation marks omitted.) Id. 686-87.
General Statutes § 55-3 provides: "No provision of the general statutes, not previously contained in the statutes of the state, which imposes any new obligation on any person or corporation, shall be construed to have a retrospective effect." The Supreme Court has observed that "[t]he obligations referred to in the statute are those of substantive law . . . Thus, we have uniformly interpreted § 55-3 as a rule of presumed legislative intent that statutes affecting substantive rights shall apply prospectively only . . . The legislature only rebuts this presumption when it clearly and unequivocally expresses its intent that the legislation shall apply retrospectively." (Citations omitted; internal quotation marks omitted.) Gil v.Courthouse One, supra, 239 Conn. 688-89; see also Little v. Ives,158 Conn. 452, 457, ("presumption is that statutes affecting substantive rights are intended to operate prospectively, and to furnish a rule for future cases only, unless they contain language unequivocally and certainly embracing past transactions"). "On the other hand, [p]rocedural statutes and rules of practice ordinarily apply retroactively to all actions whether pending or not at the time the statute [or rule] became effective, in the absence of any expressed intent to the contrary . . . Where an amendment in effect construes and clarifies a prior statute [it] must be accepted as the legislative declaration of the meaning of the original act . . . Such a clarifying amendment, thus, would be applied retroactively. In sum, [u]nless the amendment is procedural in impact, is intended to clarify the original intent of an earlier CT Page 5033 statute, or specifically contains a provision to the contrary, it is presumed that legislation is intended to operate prospectively." (Citations omitted; internal quotation marks omitted.) Anderson v. Schieffer, 35 Conn. App. 31, 39-40.
In analyzing the statutory language, the court employs the standard rules of statutory construction. "To determine the collectively expressed legislative intent, we look first to the language of the statute itself. If that language is plain and unambiguous, we go no further . . . If, however, the statute is ambiguous, e.g., either opaque or susceptible to alternative conflicting interpretations, we will seek guidance from extrinsic aids, e.g., the legislative history . . ." Anderson v. Schieffer,supra, 35 Conn. App. 40-41. "[E]ven if a statute is considered clear on its face, if a literal interpretation of that statute would lead to unworkable results, resort to other aids to determine legislative intent is appropriate." State v. Cain,223 Conn. 731, 744.
Section 29 of P.A. 93-297 provides: "This act shall take effect from its passage, except that section 1 to 24, inclusive and section 28 shall take effect January 1, 1994, and sections 1, 2, and 5 to 24 inclusive, shall be applicable to acts or omissions occurring on or after January 1, 1994."
On its face, P.A. 93-297 § 29 would clearly effect substantive law rather than procedural law because P.A. 93-297 § 1 eliminates stacking and thus limits the statutory uninsured/underinsured motorist liability of insurance companies and abolishes an insured's previous ability to intra-stack the policy coverage. See Little v. Ives, supra, 158 Conn. 457
(legislation which limits or increases statutory liability is substantive). P.A. 93-297 was enacted to alter previous judicial policy. "In the interpretation of a statute, a radical departure from an established policy cannot be implied. It must be expressed in unequivocal language. . ." Gil v. Courthouse One,
supra, 239 Conn. 676, 687. P.A. 93-297 § 29 does not unequivocally express that P.A. 93-287 § 1 would apply to acts or omissions covered by insurance policies in effect prior to the date of enactment; § 29 refers to acts or omissions and is silent as to what effect the passage of the act would have on policies issued prior to January 1, 1994.
In clarifying the operation of P.A. 93-297, Representative Andrews asked, "[f]or those of us who have a policy that renews CT Page 5034 after January 1, how is this going to affect us? Are any accidents we have after January 1 going to apply to this law, or our current policy until it renews?" 36 H.R. Proc. Pt. 27, 1993 Sess., 9757. Representative Lyons responded: "[T]he bill will take effect as you renew your policy, upon renewal of your policy. This will affect you." 36 H.R. Proc. Pt. 27, 1993 Sess., 9757. See Patriot Gen. Ins. Co. v. Normandie, Superior Court, judicial district of Hartford-New Britain, at New Britain, Docket No. 463778 (May 11, 1995) (Handy, J.) (14 CONN. L. RPTR. 311, 1 Conn. Opp. 656) (holding that pursuant to P.A. 93-297, "some changes would be effective for any accident occurring after [January] 1, 1994, regardless of the policy, while some changes would only be effective upon renewal of the policy").
This interpretation finds support in a bulletin issued by the Commissioner of Insurance. "Effective January 1, 1994, under Public Act 93-297, . . . a prohibition against `stacking' of uninsured/underinsured motorist protection is applicable, for new and renewal policies effective on or after January 1, 1994, to acts or omissions occurring on or after January 1, 1994 . . . It is the Insurance Department's position that these policies must be adhered to as written. This means that . . . Ian] insured whose policies provided 'stacking' based on the law when issued, will receive stacked limits of uninsured/underinsured motorist coverage for accidents occurring up to the expiration of the policy . . ." Bulletin PC-20, Part I, Conn. Bulletins (September 28, 1993). "[I]t is the well established practice of [the] court to accord great deference to the construction given [a] statute by the agency charged with its enforcement . . ." (Citations omitted; internal quotation marks omitted.) Starr v. Commissionerof Environrnental Protection, 226 Conn. 358, 372. Legislative history and the Insurance Department's interpretation support the conclusion that the legislature intended that P.A. 93-297 would not govern a policy that was issued and in effect, yet not renewed, at the time the public act was enacted.
In the present case, Wozniak submitted her affidavit and a copy of the policy cover sheet as evidence that the policy was in effect prior to January 1, 1994. The policy cover sheet indicates that the policy period began on March 20, 1993 and expired on March 20, 1994. In her affidavit, Wozniak attests to the accuracy of the policy dates. (Affidavit of Maureen Wozniak, ¶ 11.) Wozniak's policy is not governed by P.A. 93-297 because it was issued and in effect prior to January 1, 1994. Further, the policy was not renewed before the date of the accident. Because CT Page 5035 Wozniak's claim is not controlled by P.A. 93-297, the court need not reach the constitutional issues raised sua sponte. "[The] court has a basic judicial duty to avoid deciding a constitutional issue if a nonconstitutional ground exists that will dispose of the case." Moore v. McNamara, 201 Conn. 16, 20.
Wozniak moves for summary judgment as to liability. Wozniak relies on the arguments asserted in response to Keystone's motion for summary judgment to support her cross-motion and offers copies of police reports, her affidavit and a copy of the policy as evidence establishing that Wozniak is entitled to benefits under the policy as a matter of law. In response Keystone argues that Wozniak is not entitled to summary judgment for the reasons submitted in its motion for summary judgment. Keystone further argues that Wozniak has failed to meet her burden of showing the nonexistence of any material fact. Keystone further argues that Wozniak has failed to prove that her injuries were the proximate or direct cause of the alleged accident.
General Statutes § 38a-336 (a)(1) provides in pertinent part: "[e]ach automobile liability insurance policy shall provide insurance, herein called uninsured and underinsured motorist coverage, . . . for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and underinsured motor vehicles. . ." The Supreme Court has emphasized that "`[l]egally entitled to collect damages from the owner or driver of an uninsured motor vehicle,' means that in order to recover under the policy, the plaintiff must prove . . . that the other motorist was legally liable under the prevailing law . . ."Williams v. State Farm Mutual Automobile Ins. Co., 229 Conn. 359,367-68. In the present case, Wozniak alleges that the accident was caused by the alleged negligence of Ullman. (Complaint ¶ 9.) "Issues of negligence are ordinarily not susceptible of summary adjudication but should be resolved by trial in the ordinary manner." (Internal quotation marks omitted.) Fogarty v.Rashaw, 193 Conn. 442, 446.
For the foregoing reasons, the defendant's motion and the plaintiffs cross motion for summary judgment are each denied.
FRACASSE, J.