Alex SMITH; Angela Smith, Plaintiffs,

v.

**COLDWELL BANKER REAL ESTATE SERVICES, Inc.; Mary Licata, Individually; Jonathan Wittaker, In his capacity as executor of the Estate of Eunice Wittaker; Joseph Mager, Jr.,: In his capacity as executor of the Estate of Eunice Whittaker, Defendants.**

No. 398cv1160(JBA).

United States District Court,
D. Connecticut.

Aug. 30, 2000.

John E. Chiota, Gordon, Muir & Foley, Hartford, CT, Vincent Michael Simko, Jr., Simko Law Firm, Bridgeport, CT, for Alex Smith.

Vincent Michael Simko, Jr., Simko Law Firm, Bridgeport, CT, for Angela Smith.

Dion W. Moore Williams, Cooney & Sheehy Bridgeport, CT, for Coldwell Banker Re Svcs, Inc., Mary Licata.

Robert J. Sickinger, Cummings & Lockwood, Stamford, CT, Kevin R. Murphy, John W. Mills, Murphy & Karpie, Bridgeport, CT, for Jonathan Whittaker, Joseph Mager, Jr.

Peter T. Fay, Kerry E. Knobelsdorff, Neubert, Pepe & Monteith, New Haven, CT, for Pilar E. Smith.

### RULING ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
#### [Doc.# 29]

ARTERTON, District Judge.

In this action, the plaintiffs, Mr. and Mrs. Smith, allege that Mr. Whittaker and Mr. Mager, in their capacity as executor of the estate of Eunice Whittaker ("Defendant Sellers") and sellers' real estate agent, Mary Licata and their broker Coldwell Banker Real Estate Services, Inc. ("Defendant Agents") knowingly violated several sections of the Residential Lead–Based Paint Hazard Reduction Act of 1992, codified at 42 U.S.C. § 4852d by failing to provide a lead paint report and obtain a signed disclosure statement from the plaintiff purchasers before selling the residence located at 52 Governors Avenue in Milford, Connecticut. Plaintiffs now move for summary judgment.

### Residential Lead–Based Paint Hazard Reduction Act of 1992

Section 1018 of the Residential Lead–Based Paint Hazard Reduction Act of 1992 (42 U.S.C. § 4852d) requires that sellers of residential housing built before 1978 (with certain exceptions) disclose known information on the presence of lead-based paint and lead-based paint hazards. Section 4852d also provides that "any person who *knowingly* violates the provisions of this section shall be jointly and severally liable to the purchaser or lessee in an amount equal to 3 times the amount of damages incurred by such individual." 42 U.S.C. § 4852d(b)(3) (emphasis added). The Act does not, however, give the purchaser or tenant the right to rescind the transaction, contract of sale or lease if the seller or landlord has failed to comply with the Act's requirements. *See* 42 U.S.C. § 4852d(c) ("Nothing in this section shall affect the validity or enforceability of any sale or contract for the purchase and sale or lease of any interest in residential real

property ... nor shall anything in this section create a defect in title.").

Regulations enacted pursuant to § 4852d establish the following disclosure requirements:

§ 35.88 Disclosure requirements for sellers and lessors.

(a) The following activities shall be completed before the purchaser or lessee is obligated under any contract to purchase or lease target housing that is not otherwise an exempt transaction pursuant to § 35.82. Nothing in this section implies a positive obligation on the seller or lessor to conduct any evaluation or reduction activities.

(1) The seller or lessor shall provide the purchaser or lessee with an EPA-approved lead hazard information pamphlet. Such pamphlets include the EPA document entitled Protect Your Family From Lead in Your Home (EPA # 747–K–94–001) or an equivalent pamphlet that has been approved for use in that State by EPA.

(2) The seller or lessor shall disclose to the purchaser or lessee the presence of any known lead-based paint and/or lead-based paint hazards in the target housing being sold or leased. The seller or lessor shall also disclose any additional information available concerning the known lead-based paint and/or lead-based paint hazards, such as the basis for the determination that lead-based paint and/or lead-based paint hazards exist, the location of the lead-based paint and/or lead-based paint hazards, and the condition of the painted surfaces.

(3) The seller or lessor shall disclose to each agent the presence of any known lead-based paint and/or lead-based paint hazards in the target housing being sold or leased and the existence of any available records or reports pertaining to lead-based paint and/or lead-based paint

hazards. The seller or lessor shall also disclose any additional information available concerning the known lead-based paint and/or lead-based paint hazards, such as the basis for the determination that lead-based paint and/or lead-based paint hazards exist, the location of the lead-based paint and/or lead-based paint hazards, and the condition of the painted surfaces.

(4) The seller or lessor shall provide the purchaser or lessee with any records or reports available to the seller or lessor pertaining to lead-based paint and/or lead-based paint hazards in the target housing being sold or leased. This requirement includes records and reports regarding common areas. This requirement also includes records and reports regarding other residential dwellings in multifamily target housing, provided that such information is part of an evaluation or reduction of lead-based paint and/or lead-based paint hazards in the target housing as a whole.

(b) If any of the disclosure activities identified in paragraph (a) of this section occurs after the purchaser or lessee has provided an offer to purchase or lease the housing, the seller or lessor shall complete the required disclosure activities prior to accepting the purchaser's or lessee's offer and allow the purchaser or lessee an opportunity to review the information and possibly amend the offer.

24 C.F.R. § 35.88.

In addition, the regulations impose the following requirements:

(a) Seller Requirements. Each contract to sell housing shall include an attachment containing the following elements, in the language of the contract ...:

(1) A Lead Warning Statement (with the requisite language).

(2) A statement by the seller disclosing the presence of known lead-based paint and/or lead-based paint hazards in the target housing. . . .

(3) A list of any records or reports available to the seller pertaining to lead-based paint and/or lead-based paint hazards in the housing that have been provided to the seller. . . .

(4) A statement by the purchaser affirming receipt of the information setout in paragraph (a)(2) and (a)(3) of this section and the lead hazard pamphlet. . . .

(5) A statement by the purchaser that he or she had either (i) received the opportunity to conduct the risk assessment or inspection . . . . or (ii) waived the opportunity.

(6) . . . [A] statement that: (i) the agent has informed the seller of the seller's obligations . . . and (ii) The agent is aware of his/her duty to ensure compliance with the requirements of this subpart.

(7) The signature of the sellers, agents and purchasers certifying to the accuracy of their statements to the best of their knowledge, along with the dates of signature.

40 C.F.R. § 745.113.

The seller's agent has the following responsibilities:

§ 35.94 Agent responsibilities.

(a) Each agent shall ensure compliance with all requirements of this subpart. To ensure compliance, the agent shall:

(1) Inform the seller or lessor of his/her obligations under §§ 35.88, 35.90, and 35.92.

(2) Ensure that the seller or lessor has performed all activities required under §§ 35.88, 35.90, and 35.92, or personally ensure compliance with the requirements of §§ 35.88, 35.90, and 35.92.

(b) If the agent has complied with paragraph (a)(1) of this section, the agent shall not be liable for the failure to disclose to a purchaser or lessee the presence of lead-based paint and/or lead-based paint hazards known by a seller or lessor but not disclosed to the agent.

24 C.F.R. § 35.94.

## Facts

For purposes of ruling on this motion, the following facts are assumed. The residence located at 52 Governors Avenue in Milford, CT was built before 1978 (est. 1860) and prior to August 20, 1997 had been owned by the estate of Eunice Whittaker. On January 9, 1997, defendants Mager and Whittaker ("Seller Defendants") in their roles as co-executors of the Eunice Whittaker estate granted defendant Coldwell Banker the exclusive right to sell the house. *See* Pl.Ex. H ("Listing Broker: Coldwell Banker R.E").[1] Mary Licata, the Coldwell Banker agent who originally met with Mr. Whittaker and eventually listed the property, suggested that sellers conduct a lead paint test based on her estimate of the house's age and the fact it still had the original window sills. *See* Licata Dep. at 34.

On January 7, 1997, Mr. Whittaker hired Environtech, Inc. to test the home for lead paint. The report dated January 8, 1997, which was forwarded to Mr. Whittaker's attention, revealed positive lead paint re-

---

**1.** Although Coldwell and Licata's Local R. 9(c) Statement, at p. 3, indicates that Ms. Licata served as a dual agent for sellers and purchasers and references Ms. Licata's deposition testimony (p. 60), this page from Ms. Licata's deposition is not included as part of this record by defendants nor plaintiff. Therefore, the Court has no evidence con- tained in this record indicating there is a genuine dispute that Ms. Licata was an agent in Coldwell Banker's Milford office. *See* Pl. Ex. H. *See* Coldwell Banker and Licata's Mem. In Opp'n to Motion for Summary Judg- ment at 4 (referencing "As to Coldwell Bank- er and its agent, Mary Licata").

sults in several locations at either all paint layers down to the substrate and/or those layers closer to the surface. *See* Pls.' Ex. A. When the Seller Defendants completed the lead paint disclosure on January 7, 1997, they returned it to Ms. Licata and indicated the existence of lead paint and referenced a lead paint report which was not attached. *See* Licata Dep. 56. As a result, Ms. Licata did not initial the "agent's acknowledgment" section of the disclosure report of lead paint since she did not have a copy of the report. *See* Licata Dep. at 56. Despite Ms. Licata's repeated requests to sellers for a copy of Environtech's report from the sellers, she only received a copy of the report three weeks before the closing in late July or early August of 1997, after the contract was signed. *See* Licata Dep. at 70.

The plaintiffs first became interested in purchasing the home in the Spring of 1997 and contacted the property's exclusive agent, Ms. Licata. By July 15, 1997, plaintiffs had negotiated a purchase price and signed the contract for sale with the sellers. *See* Pls.' Ex. B. Although plaintiffs were verbally advised that lead was present in the house, (*see* Defs.' Local R.Civ.P. 9(c) Statement ¶ 1),[2] that the lead paint report existed, (*see* Licata Dep. at 84) and were provided a copy of the Environmental Protection Agency handbook (*see* Defs. Local R.Civ.P. 9(c) ¶ 4),[3] they did not receive a copy of the lead paint report until the closing and never signed the lead paint disclosure form acknowledging the receipt of the information required to be disclosed. Ms. Licata did not ask plaintiffs to sign the

disclosure statement of lead paint acknowledging receipt of the lead paint report since she had not provided them with the Environtech report until the closing on August 20, 1997. *See* Licata Dep. at 88–89.

### Legal Analysis

Based on the parties' memoranda and the Court's research, this case interpreting the standard for imposing civil liability on a seller and his or her agent for failure to comply with the disclosure requirements under § 4852d is a matter of first impression.[4] Plaintiffs move for summary judgment against all four defendants claiming that the undisputed facts demonstrate that the defendants knowingly violated the requirement that sellers (and their agents) provide purchasers with the lead paint report prior to the time they entered the contract for sale and the requirement that defendants receive written confirmation from the buyers that they had received all of the information that must be disclosed under § 4852d.

■ With respect to the first requirement of delivery of the lead paint report, each of the defendants claim that they satisfied the statutory requirement by informing the purchasers of the lead paint report's existence and producing it at the closing. Since it is clear that simply putting the plaintiffs on notice of the lead paint report's existence does not satisfy the statutory requirement that the report be provided to the purchaser, the issue is whether production of the lead paint re-

2. Although defendants allege this fact in their Local R.Civ.P. 9(c) Statement referencing Ms. Licata's deposition testimony at 60, they do not submit this section of her deposition and it is not included plaintiff's submission.

3. Similarly defendants allege this fact in their Local R.Civ.P. 9(c) Statement based on reference to Ms. Smith's Deposition at 8, but do not submit her deposition, which was also not included in plaintiff's submission.

4. Although the Court's research reveals two cases, (one of which is unpublished) involving

§ 4852d, neither directly interprets the standard for imposing civil liability on the seller and his or her agent. *See Davis v. Philadelphia Housing Authority*, 121 F.3d 92 (3d Cir. 1997) (finding minor and mother, as successor tenants of apartment previously subject to Act had standing to file suit against housing authority); *National Multi Housing Council v. U.S. EPA*, 1999 WL 334511 (D.C.Cir.1999) (unpublished) (dismissing as unripe suit seeking judicial review of EPA document interpreting the Residential Lead Paint Hazard Reduction Act of 1992).

port at the closing satisfies the statutory requirement that disclosure "must occur before the purchaser ... is obligated under any contract to purchase ... the housing." *See* 42 U.S.C. § 4852d. It is undisputed that the parties signed the contract for sale and exchanged monies prior to the time the lead report was finally given to the purchasers.

Defendants contend that neither party ever became obligated under the terms of the contract since the contract provided: "the parties agree that a precondition to the validity of this agreement is that each party has received, signed and annexed hereto a completed Disclosure and Acknowledgment Form re: Lead Paint as required by Federal EPA/HUD disclosure regulations." Mem. In Opp'n at 3.[5] The defendants argue that absent the signed disclosure form, this contractual precondition was never satisfied and thus the contract for sale was invalid and plaintiffs never became obligated under any contract. As plaintiffs point out, defendants' proposed interpretation would preclude plaintiffs' ability to remedy violations of § 4852d since they would never be obligated under the contract unless all of the disclosure requirements were satisfied. Under defendants' telling, purchasers could never recover under this Act even if defendants knowingly violated the disclosure requirements so long as the contract for sale contained analogous language. Such language would defeat the purpose requiring the seller and his or her agent disclose the lead paint report before the purchaser becomes obligated and would undermine Section 1018(c) of the Act which provides the regulatory provisions do not "affect the validity or enforceability of any sale or contract for the purchase and sale or lease of any interest in residential property" and nothing in this rule "shall create a defect in title." 42 U.S.C. § 4852d(b). As explained in the Final Rule promulgated by the EPA and HUD:

Therefore, the final rule identifies only the latest point at which full disclosure must occur. Using the statute as a guide, the EPA and HUD have identified this point as before the purchaser or lessee becomes obligated under any contract to purchase or lease the housing. ... During sales transactions, for example, purchasers often take the first step toward formalizing a sales agreement by providing a written offer to purchase the housing. If accepted and signed by the seller, this offer typically becomes the sales contract. The statute's mandate that disclosure and notification take place before the purchaser is obligated imposes a requirement on the seller to disclose information before accepting the purchaser's offer, thereby allowing the purchaser the opportunity to review the information and to possibly amend the offer.

61 F.R. 9064, 9070–71. Therefore, the Court rejects defendants' circular argument that they can avoid liability because the contract was voidable by their failure to comply with the Act's lead paint disclosure requirements. Such contract language, if inserted by all sellers and their agents and held enforceable by the courts, would frustrate the purpose of the statute and lead to an evasion of the statute.

Given the absence of dispute that the purchasers never received a copy of the lead paint report before the parties signed the contract of sale, *see* Pls.' Ex. B, there is no material dispute that defendants violated the disclosure requirement by not providing a copy of the lead paint reports before the contract was ratified.

■ Defendants seek to excuse their failure to provide the buyers a copy of the report on the grounds that they complied by disclosing the fact that lead paint was present and alerted the purchasers that the lead paint report existed. The Court is unwilling to recognize such a defense

---

**5.** Although neither plaintiff nor defendants append a copy of the contract for sale, there is no dispute as to the accuracy of the quoted operative language.

absent any language in the statute or its regulations supporting a defense of "substantial compliance" with the purpose of the statute.

■ Alternatively, the defendants oppose summary judgment on the grounds that civil liability may not be imposed against them absent evidence of their intent or knowledge of noncompliance. They accurately contend that since the statute only imposes civil liability for "knowingly violating" one of the Act's requirements, they cannot be liable for their inadvertence or inattentiveness, but only if the evidence persuades the factfinder that the violation was committed "knowingly." "Knowingly" as commonly used and interpreted means that defendant was aware of his or her conduct and that defendant did not perform it merely through ignorance, mistake or accident. *See* BLACK'S LAW DICTIONARY 872 (6th ed.1990). Defendants, however, contend that the statute imposes a higher scienter requirement than this common meaning of the term, arguing that the "knowingly violate" standard requires a showing of bad faith or willfulness. Defendants analogize the treble damages available under § 4852d to the imposition of punitive damages under other federal and state statutes such as § 1983, the Lanham Act (15 U.S.C. § 1117(a)), the Connecticut Unfair Practices Act (Conn.Gen. Stat. § 42–110g), or the Connecticut Wage Act (Conn.Gen.Stat. § 31–72).

However, defendants' analogy does not withstand analysis of these other statutory schemes. Under the Residential Lead–Based Paint Hazard Reduction Act, 42 U.S.C. § 4852d(b)(3):

> Any person who knowingly violates the provisions of this section *shall* be jointly and severally liable to the purchaser ... in an amount equal to 3 times the amount of damages incurred by such individual.

There is nothing discretionary about the trebling of actual damages upon proof of knowing violation of the statute. Such treble damage award under § 4852d is thus distinguished from punitive damages that may be awarded by a jury in a § 1983 case when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others; the attorney's fees or treble damages the Court may award to the prevailing party under the Lanham Act, 15 U.S.C. § 1117(a) only in exceptional cases; the punitive damages imposed by the court "in its discretion" under the Connecticut Unfair Trade Practices Act, Conn. Gen.Stat. § 42–110g(a); and punitive damages awarded for a wilful violation of the Connecticut Interest Ownership Act under Conn.Gen.Stat. § 47–278. Under each of these statutes, the Court *may* award punitive damages, double or treble damages within its discretion. Section 4852d, in contrast, does not impose one proof standard for actual damages and another for the multiplier.

The distinction between the scienter contemplated by use of the term "knowingly" and the higher standards invoked by defendants is easily demonstrated by comparing the treble damage award imposed under § 4852d with what defendants claim is the analogous double recovery of wages for certain violations of the Connecticut state wage law under Conn.Gen.Stat. § 31–72. In contrast to the nondiscretionary nature of § 4852d damages, Conn.Stat. Gen. § 31–72 is a state law which simply gives the Court discretion to impose double damages for violations of the state's wage law. Although Section 31–72 does not specify the standard governing doubling of damages, the Connecticut Appellate Court has required a showing of bad faith or willfulness before the court may exercise its discretion and award double actual damages. *See e.g., Anderson v. Schieffer,* 35 Conn.App. 31, 645 A.2d 549 (1994). In contrast, the damages available under § 4852d are nondiscretionary once plaintiff demonstrates a knowing violation. The Court sees no basis to elevate the scienter requirement where the statute

clearly establishes treble damages shall be awarded when a person knowingly violates the statute, without regard to their motivation or bad faith in doing so. *Cf. McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988) (holding that the "plain language" of the Fair Labor Standards Act's "willful" liquidated damages standard requires that "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute," without regard to the outrageousness of the conduct at issue).

This interpretation of the statute's plain language is also supported by the overall enforcement scheme contemplated under the Act, which combines government enforcement by means of fines that may be imposed by the Environmental Protection Agency, with private enforcement by means of civil actions brought by individuals who sustain actual damage as a result of such violations. *See* 42 U.S.C. § 4852d(b). Since the statute enlists purchasers and lessors as private attorneys general to enforce the lead paint disclosure requirements, it also rewards them for their time and effort by trebling their actual damages. Private enforcement of the lead paint disclosure requirements does not supplant or replace public enforcement by the federal government, but rather provides an additional remedy, thereby increasing the likelihood that the violator is discovered and such illegal conduct is discouraged. While the automatic trebling of the plaintiff's actual damages incurred as a result of violating this federal statute certainly may serve some deterrent or disgorgement function, it also serves as an important incentive to those directly injured by the violation to seek compensation for their injury as well as their effort in enforcing the law.

Having determined that the commonly understood meaning of "knowingly" is the appropriate scienter standard to impose civil liability under the statute, the Court must now determine whether there exists any dispute of material fact as to whether the defendants "knowingly violated" the Act by not providing the purchasers with a copy of the lead paint report until the closing. The plaintiff's evidence of scienter as to the defendant agents (Licata and Coldwell Banker) and the defendant sellers (Whittaker and Mager) must be analyzed separately.

■ The defendant agents, Ms. Licata and Coldwell Banker concede in ¶ 10 of their Local R. 9(c) Statement that "the defendants knew the existence of potential lead paint hazards should be disclosed." In addition, Ms. Licata, the agent for defendant sellers and within the scope of her authority under Coldwell Banker, testified at her deposition that she was aware of the disclosure requirements including production of the lead paint report and specifically did not have plaintiffs sign the disclosure and acknowledgment form since she knew they had not received the lead paint report (notwithstanding her repeated requests for a copy). It is undisputed therefore that Ms. Licata knew the Act's requirement and yet did not provide purchasers a copy of the lead paint report until the closing. In opposition, Ms. Licata and Coldwell Banker offer no affidavit or other evidence rebutting the conclusion that Ms. Licata knowingly violated the Act by failing to ensure the purchasers were timely provided a copy of the lead paint report. Nonetheless, the defendant agents maintain that the issue of their intent or state of mind is inappropriate for resolution on summary judgment. While defendants are correct that the Court must be wary in resolving issues of intent on summary judgment, their burden in opposing summary judgment was to submit evidence showing beyond a mere metaphysical doubt that there exists evidence controverting that which shows their knowing violation of the statute. The defendant agents' conclusory denials in their memorandum in opposition without any evidentiary support do not create an issue of disputed material fact precluding sum-

mary judgment. *See* Fed.R.Civ.P. 56(e) which provide that "an adverse party may not rest upon the mere allegations or denials of the adverse party's response." Absent any evidence in rebuttal, based on the uncontroverted evidence submitted by plaintiff, no reasonable jury could find that defendant Licata and Coldwell Banker did not "knowingly violate" the Act.

■ This record on summary judgment, however, does not demonstrate that defendant sellers Whittaker and Mager "knowingly" violated the Act. Plaintiffs' evidence submitted in support of their motion for summary judgment only reflects that Whittaker and Mager completed and signed the disclosure of lead-based paint which disclosed the presence of lead paint, and referenced a lead paint report as being annexed to the disclosure statement even though it was not; that defendant Licata requested a copy of the lead paint on several occasions; and that they finally provided it to Ms. Licata in early August 1997 after the sales agreement was signed. *See* Whittaker Dep. 16–18. (Pl.'s Ex. F). Plaintiff's Local R. 9(c) Statement only references the defendant agents' knowledge and does not cite any portion of the record as supporting the defendant sellers' knowledge. *See* Pl.'s Local R. 9(c) Statement at ¶ 10 (only referencing defendant Licata and Coldwell Banker's knowledge). Although Whittaker and Mager's Local Rule 9(c) Statement simply denying their knowledge does not create a dispute of material fact preventing summary judgment, plaintiff's evidence fails to support a reasonable inference that Whittaker and Mager "knowingly" violated the Act. Plaintiffs' failure to produce any evidence as to the defendant sellers' knowledge precludes summary judgment. Therefore, plaintiff's motion for summary judgment is DENIED with respect to the seller defendants, Whittaker and Mager.

### Conclusion

Based on the foregoing analysis, plaintiff's Motion for Summary Judgment [Doc. # 29] GRANTED in part and DENIED in part. It is GRANTED as to liability with respect to defendants Licata and Coldwell Banker, and DENIED as to defendants Whittaker and Mager is DENIED.

The trial of this matter will be on liability of the defendant sellers', and as to damages as to all defendants.