# United States Court of Appeals
## For the First Circuit

No. 11-1412

JAMESON C. RANDALL,

Plaintiff, Appellant,

v.

LACONIA, NH,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Landya B. McCafferty, U.S. Magistrate Judge]

Before

Boudin, Howard, and Thompson,
Circuit Judges.

Christopher J. Seufert and Seufert Professional Association for appellant.
Robert C. Dewhirst and Devine, Millimet & Branch, P.A. for appellee.

May 8, 2012

**THOMPSON, Circuit Judge.** Federal law requires home sellers to alert potential home buyers to the presence of lead-based paint hazards. The City of Laconia, New Hampshire sidestepped this requirement when it sold Jameson Randall his house. Some years later, after learning that lead-based paint was present in his home, Randall filed suit. The sole question is whether his lawsuit is time-barred. We agree with the district court that it is, and therefore affirm.

## BACKGROUND

In 1998, the appellee, the City of Laconia (the "City" or "Laconia"), purchased a house located at 192 Elm Street in Laconia (the "property" or "home"). The property was an older house, built before 1978. The City purchased the property, which at the time was a group home, to provide extra storage and parking for the adjacent branch of the Laconia Public Library (the "Library"). In connection with the transaction, the seller turned over a "Lead Paint Inspection Report," which detailed the results of a 1996 inspection performed by Alpha Lead Consultants, Inc. (the "Alpha report"). The Alpha report indicated that lead-based paint was present in the home. After the purchase, the Library maintained a copy of the Alpha report in its files.

Some years later the City decided to sell the property and in 2003, the appellant, Jameson Randall, contracted to purchase it. When Randall signed the purchase and sale agreement he

received a blank, pre-printed, standard lead-based paint disclosure form titled "Disclosure of Information on Lead-Based Paint and Lead-Based Paint Hazards for Housing Sales" (the "disclosure form"). The disclosure form included a section titled "Seller's Disclosure," in which the seller (the City) was to indicate whether it had any knowledge of lead-based paint hazards[1] in the home and whether it had any reports or records pertaining to the same. The disclosure form also provided for a "Purchaser's Acknowledgment" that included an acknowledgment that the buyer (Randall) had a ten-day window in which to conduct a lead-based paint hazard inspection. Randall and his buyer's agent signed the blank disclosure form. The buyer's agent then informed Randall that the City would complete the disclosure form later. However, the City never completed the form nor did it turn over the Alpha report.[2] Randall opted not to have his own inspection performed.[3]

----

[1] The disclosure form and relevant statute use the terms "lead-based paint" and "lead-based paint hazards" in conjunction. For simplicity's sake, we will just say "lead-based paint hazards."

[2] It is not entirely clear why the City did not complete the disclosure form or divulge the Alpha report, though there is some suggestion that the Alpha report might have been housed in a separate Library file as opposed to in a City file. In any event, there is no indication that the omissions were intentional and Randall does not allege any fraudulent conduct on the part of the City.

[3] Randall says he thought there was no need for an inspection because his wife, during a tour of the property, was told by a Library employee that any lead-based paint hazard issues would have been taken care of when the former owner, the group home, applied for licensing. The City disputes that the employee made this

Despite not having received the completed disclosure form from the City, Randall went ahead and closed on the property, taking title on July 22, 2003. He then moved into the home with his wife and two daughters. In 2006, the couple had a third child, a son. In 2008, tests taken at the son's two-year physical revealed an elevated blood lead level. As a result, the state of New Hampshire sent a representative to the property to perform an inspection for lead. The inspection (the results of which were given to Randall in an October 13, 2008 letter) revealed lead-based paint hazards in the home. Elimination or control of the hazards was recommended.

On February 9, 2010 - approximately six and one-half years after he purchased the property - Randall filed this lawsuit. The sole count in the complaint alleged that the City had violated 42 U.S.C. § 4852d, which requires the disclosure of lead-based paint hazards in connection with the sale of homes built before 1978. Though at the time of filing suit Randall had not had any removal or abatement of the lead-based paint performed, he alleged that he had received an estimate of approximately $126,000 to perform the work and that he would not have purchased the home if he had known about the hazards. As part of the discovery process, Randall propounded a request for document production on the City.

---

remark. It is not necessary for us to resolve this factual dispute.

The City responded on May 28, 2010 and one of the documents that it turned over was the Alpha report. This was the first time Randall had seen the report.

A few months later, the City moved for summary judgment, alleging that Randall's cause of action was barred by the applicable three-year state statute of limitations. The City's position was that Randall's cause of action accrued when he took title to the property on July 22, 2003 and therefore his suit, filed six and one-half years later, came too late. The district court agreed and granted summary judgment in favor of the City. Randall appealed.

## ANALYSIS

We review a grant of summary judgment on statute of limitations grounds de novo, construing the record in the light most favorable to the non-movant. See Montalvo v. Gonzalez-Amparo, 587 F.3d 43, 46 (1st Cir. 2009). We affirm if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

### i. Residential Lead-Based Paint Hazard Reduction Act

Randall filed suit under the Residential Lead-Based Paint Hazard Reduction Act (the "Act"), 42 U.S.C. §§ 4851-4856, and in particular under § 4852d, which allows for a private cause of action for three times the amount of any damages incurred by the buyer, id. § 4852d(b)(3). The Act provides for the promulgation of

-5-

regulations that require a seller to "disclose to the purchaser . . . the presence of any known lead-based paint, or any known lead-based paint hazards, in such housing and provide to the purchaser . . . any lead hazard evaluation report available to the seller." Id. § 4852d(a)(1)(B). Such regulations were promulgated. See 24 C.F.R. § 35.88(a) (Housing and Urban Development); 40 C.F.R. § 745.113(a) (Environmental Protection Agency).

The City does not attempt to argue that it met these requirements, nor does it appear that it truthfully could make this argument. It is undisputed that prior to selling Randall the property the City did not complete the disclosure form, turn over the Alpha report, or otherwise inform Randall about the lead-based paint hazards in the home. The only question is whether the City's non-compliance should be excused on timeliness-of-suit grounds.

## ii. Applicable Statute of Limitations

42 U.S.C. § 4852d does not contain a limitations period and therefore a question below was what limitations period applied. There was not much debate. The City argued that the New Hampshire three-year statute of limitations for personal actions governed, Randall did not disagree, and the district court followed suit applying the state statute. See Randall v. City of Laconia, No. 10-cv-50-LM, 2011 WL 1085679, at *1-2 (D.N.H. Mar. 24, 2011) (applying N.H. Rev. Stat. Ann. § 508:4). This approach is in accord with our practice of applying "the most analogous statute of

-6-

limitations in the state where the action was brought" when a federal statute does not include a statute of limitations. Greenwood ex rel. Estate of Greenwood v. N.H. Pub. Utils. Comm'n, 527 F.3d 8, 13 (1st Cir. 2008) (citing Wilson v. Garcia, 471 U.S. 261, 266 (1985)).

Now, for the first time, Randall asserts that instead of looking to the three-year New Hampshire limitations statute, the district court should have applied the federal four-year catch-all statute of limitations for civil actions. See 28 U.S.C. § 1658(a) (stating that, "[e]xcept as otherwise provided by law, a civil action arising under an Act of Congress . . . may not be commenced later than 4 years after the cause of action accrues"). Randall admits that he would fare no better under a four-year, as opposed to a three-year, limitations period should we agree with the district court that his cause of action accrued when he purchased the property (six and one-half years before filing suit). Perhaps for this reason, Randall only briefly raises this issue in a footnote and provides no supporting argumentation. His perfunctory treatment, as well as his raising this argument for the first time on appeal, waives the issue. See Farris v. Shinseki, 660 F.3d 557, 562 n.5 (1st Cir. 2011) (declining to consider an issue that was "never raised before the district court, nor briefed or argued" on appeal). Consequently we need not get into the merits of this particular statute of limitations debate. We assume for purposes

of this decision that the three-year New Hampshire limitations period applies to Randall's action.

### iii. The Separate Cause of Action Argument

Before we go any further, we wish to dispose of an argument of Randall's.  It is a meritless argument that unfortunately for Randall permeates his entire position on appeal.  In a nutshell Randall characterizes the City's failure to turn over the Alpha report as a separate and distinct violation from the City's other alleged violations of the Act (e.g., not completing the disclosure form, not providing a lead information pamphlet, not including a lead warning statement in the sales contract).  And, in Randall's mind, each such violation is its own cause of action complete with its own statute of limitations.  So, while he now concedes that all of the City's "other" violations are barred by the statute of limitations, Randall argues that his cause of action for the City's failure to turn over the Alpha report survives.  Relying on the discovery rule, Randall's stance is that accrual did not occur until May 2010 when he learned that the Alpha report existed after the City turned it over in discovery.  Randall claims he could not have discovered the factual basis for his claim until this time.

As we said though, this argument is founded on a faulty thesis, namely that the City's failure to turn over the Alpha report is a stand-alone violation of the Act with its own

limitations period. We have found no support for this position, nor does Randall point us to any. Perhaps the closest he comes is to reference <u>Smith</u> v. <u>Coldwell Banker Real Estate Services, Inc.</u>, a district court case out of Connecticut, which Randall claims stands for the proposition that violations of the Act are cumulative and each requirement of the Act is separate and distinct. <u>See</u> 122 F. Supp. 2d 267 (D. Conn. 2000). However, we do not see any such language in <u>Smith</u>. The only arguably comparable point in that case is when the court expressed an unwillingness to accept the home seller's argument that it had a "substantial compliance" defense because it met some, though not all, of the Act's requirements. <u>See</u> <u>id.</u> at 272-73. But we decline to speculate as to whether this point is what Randall is attempting to rely on.

Moreover, we do not disagree that the Act places multiple requirements on a seller as far as what actions must be taken (e.g., provide a lead hazard information pamphlet and permit a ten-day inspection period) and what disclosures must be made (e.g., disclose the presence of lead-based paint hazards and hand over any evaluation reports). <u>See</u> 42 U.S.C. § 4852d(a)(1)(A)-(C). That being said, Randall has not made a strong case for treating a seller's non-conformance with each of the Act's requirements as separate causes of action. He has not offered up any supporting case law, endeavored to conduct any statutory construction

analysis, or provided any analogous examples of courts parsing out the requirements of other statutes in such a manner. As a result, we decline Randall's invitation to consider the City's failure to comply with the Act's various requirements as giving rise to multiple causes of action. We must now determine when Randall's cause of action (his single cause of action) accrued.

### iv. Accrual

While we are utilizing New Hampshire law for the applicable statute of limitations, the date of accrual is a federal law question. See Gorelik v. Costin, 605 F.3d 118, 121-22 (1st Cir. 2010); Greenwood ex rel. Estate of Greenwood, 527 F.3d at 14. Though we have not had occasion to decide the accrual particulars for a 42 U.S.C. § 4852d action, we have applied the following parameters in the context of other statutes: (1) explaining that a Federal Tort Claims Act "claim generally accrues at the time of injury" unless, in certain situations, "the injury itself or its cause is not readily apparent," Donahue v. United States, 634 F.3d 615, 623 (1st Cir. 2011); (2) finding that, in an action filed under the Declaratory Judgment Act and the Public Utility Regulatory Policies Act, "[f]ederal law incorporates 'the standard rule that [accrual occurs] when the plaintiff has a complete and present cause of action,'" Greenwood ex rel. Estate of Greenwood, 527 F.3d at 14 (quoting Wallace v. Kato, 549 U.S. 384, 388 (2007) (alteration in original) (internal quotation marks omitted)); (3)

holding that Section 1983 actions accrue "'when the plaintiff knows, or has reason to know of the injury on which the action is based,'" Gorelik, 605 F.3d at 122; and (4) stating that in certain Employee Retirement Income Security Act suits "'it is the [challenged employment] decision and the participant's discovery of this decision that dictates accrual,'" Edes v. Verizon Commc'ns, Inc., 417 F.3d 133, 139 (1st Cir. 2005)(alteration in original).

Our take-away from these cases is that causes of action typically accrue when the aggrieved party suffers his injury (absent application of a discovery rule, which we will get into later). At the time of injury, the potential plaintiff has a present and complete cause of action and can sue. What this means for Randall is that his cause of action accrued on July 22, 2003, the closing date.

A violation of the Act occurs when the seller fails to make the necessary disclosures. See Mason ex rel. Heiser v. Morrisette, 403 F.3d 28, 31 (1st Cir. 2005). This reading is consistent with the purpose of the Act's disclosure requirements, which is

> to provide the purchaser . . . with notice that there could be a lead-based paint hazard present in the subject premises, and the opportunity to either decline to enter into a contract regarding the premises or proceed forward with the transaction in the face of the knowledge that a lead-based paint hazard could be present.

Id. In keeping with this goal, the Act logically requires that the seller take the necessary actions and make the requisite

-11-

disclosures "<u>before</u> the purchaser . . . is obligated under any contract to purchase . . . the housing."  42 U.S.C. § 4852d(a)(1) (emphasis added).  Therefore the City was required to comply with the Act's requirements - provide the information pamphlet, allow the inspection period, disclose the existence of lead-based paint hazards, relinquish any evaluation reports - prior to July 22, 2003, the date on which closing occurred.  Consequently, as of that date the City was one-hundred percent non-compliant and Randall had a complete and present cause of action.  When he signed the closing documents, without the City's having complied with the Act, he was injured.  Randall could have filed suit, and potentially obtained relief, at that time.  Our conclusion: Randall's cause of action against the City accrued on July 22, 2003 unless he is saved by the application of a discovery rule.

### v. The Discovery Rule

As a general proposition, a discovery rule "allow[s] a claim 'to accrue when the litigant first knows <u>or with due diligence should know</u> facts that will form the basis for an action."  <u>Merck & Co., Inc.</u> v. <u>Reynolds</u>, 130 S.Ct. 1784, 1794 (2010) (citing 2 C. Corman, Limitation of Actions § 11.1.1, p. 134 (1991 & Supp. 1993)).  To the extent that such a rule is applicable to this case, it does not help Randall.[4]  Randall's deposition

---

[4] A brief clarification on why we are being equivocal on this point.  The parties and the district court assumed the applicability of New Hampshire's discovery rule.  <u>See</u> N.H. Rev.

testimony strongly suggests that he had actual knowledge that the City had not returned the disclosure form prior to closing. Even generously assuming this not to be the case, it is clear that at the very least, in the exercise of due diligence, Randall should have known. He had previously signed the blank disclosure form and been told by his agent that the City would complete it. The City never did. Nonetheless, Randall did not follow-up with his agent to see why he had not received the signed form. Instead he went ahead with the purchase.

That Randall did not (and could not) specifically know about the Alpha report at that time is of no weight in our discovery-rule analysis. Turning over the report was just one in a series of obligations imposed by the Act, and in fact, identification of the report was one of the disclosures that the City was required to make on the disclosure form. Because at the time of closing Randall had discovered (or at a minimum should have discovered) that the City had not completed the disclosure form or made any of the compulsory disclosures, the statute of limitations

---

Stat. Ann. § 508:4 (providing that in the event the injury and its causal relationship to the act or omission complained of were not discovered and could not have reasonably been discovered, an action shall be commenced within three years of the plaintiff's making the discovery). However, as we noted, it is federal law that controls the accrual issue. Though there is a dearth of law on when actions accrue for purposes of 42 U.S.C. § 4852d, as a general matter, courts apply forms of the "discovery rule" to all types of claims. See Merck & Co., Inc. v. Reynolds, 130 S.Ct. 1784, 1794 (2010).

clock started ticking.  It is not necessary that Randall knew the full extent of, or the particulars of, the City's wrongful conduct.[5]  See Epstein v. C.R. Bard, Inc., 460 F.3d 183, 187 (1st Cir. 2006) (stating that in connection with the Massachusetts discovery rule, a "plaintiff is considered to be on 'inquiry notice' when the first event occurs that would prompt a reasonable person to inquire into a possible injury at the hands of the defendant"); Feddersen v. Garvey, 427 F.3d 108, 113 (1st Cir. 2005) (finding that in a legal malpractice action, the New Hampshire "discovery rule is not intended to toll the statute of limitations until the full extent of the plaintiff's injury has manifested itself'"); Callahan v. United States, 426 F.3d 444, 451 (1st Cir. 2005) (explaining that in a Federal Tort Claims Act suit, "'something less than definitive knowledge is required'" and "[a]ccrual is triggered by 'the discovery of sufficient facts about the injury and its cause'" to prompt an inquiry).

Ultimately we cannot say for certain whether the Alpha report would have come to light had Randall pressed for a completed disclosure form.  But this uncertainty does not change our conclusion.  Even applying the discovery rule, Randall's cause of

---

[5] Our conclusion might be different had the City actually completed the disclosure form and on it affirmatively (and inaccurately) indicated that there were no relevant reports.  But that is not the situation we have here.

-14-

action still accrued when he closed on the property on July 22, 2003.

## CONCLUSION

Because Randall filed this lawsuit six and one-half years after his cause of action accrued, the suit is untimely under New Hampshire's three-year limitations period.  We affirm the district court's grant of summary judgment in favor of the City.

**-Concurring Opinion Follows-**

**Howard**, **Circuit Judge, (Concurring).** A person damaged by a violation of the Residential Lead-Based Paint Hazard Reduction Act may seek recovery against the violator. 42 U.S.C. § 4852d(b)(3). Among the Act's express requirements, implemented by a regulation, is one that imposes on a seller the obligation to hand over to the buyer "any lead hazard evaluation report available to the seller." § 4852d(a)(1)(B). The seller is required to provide this report before the buyer is obligated to purchase the house. § 4852d(a)(1). I am not prepared to say that the statute of limitations for a civil suit based on an alleged violation of this strict consumer protection provision necessarily began to run at the same time that it did for the cause of action based on the other disclosure violations alleged in this case.

Moreover, the seller's further arguments that the buyer was on at least inquiry notice do not persuade me. I do not accept the seller's argument that its failure to provide to the buyer a timely and completed lead paint hazard disclosure form put the buyer on inquiry notice that the seller had also failed to hand over an existing lead paint report; in fact, all indications are that even had the seller provided the form, it would not have disclosed the existence of the report. Nor do I accept the seller's argument that the buyer's ability and opportunity to test for lead paint also put the buyer on inquiry notice that a report existed.

Despite these misgivings, I agree with the result in this case, based upon an argument made by the seller in the district court. Under the Act, sellers are liable to buyers only for knowing violations. § 4852d(b)(3). To permit a finding of liability on this record would be to convert the knowing violation standard to one of mere negligence. Congress explicitly chose the higher standard.