(iii) Obtains the consumer's affirmative consent, or opt-in, to the institution's payment of ATM or one-time debit card transactions; and
(iv) Provides the consumer with confirmation of the consumer's consent in writing, or if the consumer agrees electronically, which includes a statement informing the consumer of the right to revoke such consent.
12 C.F.R. § 1005.17(b). Further, the mandated disclosure must "be clear and readily understandable." 12 C.F.R. § 1005.4(a)(1).
Defendant's Opt In Agreement states that "[a]n overdraft occurs when you do not have enough money in your account to cover a transaction." (Docket No. 24-2 at 4). Plaintiff argues that this description does not accurately describe Defendant's practice. (Docket No. 25 at 16). Defendant contends that when read in conjunction with the Agreement, the Opt-In Agreement sufficiently and accurately describes Defendant's policies. For the reasons stated above in the context of the breach of contract claim, the language Defendant uses is ambiguous. Therefore, I do not find that "enough money" accurately describes Defendant's policy of using the "available balance" method such that a member could meaningfully provide affirmative consent.
b. Defenses
i. Safe Harbor
Defendant alternatively argues that it is protected from liability under the EFTA safe harbor provision. Financial institutions are protected from liability under EFTA for "any failure to make disclosure in proper form if a financial institution utilized an appropriate model clause issued by the Bureau or the Board." 15 U.S.C. § 1693m(d)(2).
Defendant relies on Tims v. LGE Community Credit Union , 2017 WL 5133230 (N.D. Ga. Nov. 6, 2017). The court in that case found that the safe harbor provision applied because " 'enough money' could mean either balance calculation method." Id. at *6. Therefore, the court held that "LGE cannot be said to have explicitly misled the Plaintiff or inaccurately described its overdraft program. The only *91 thing LGE can be said to be guilty of is a lack of precision." Id.
Other courts, however, have been critical of the Tims holding. See, e.g., Walbridge , 299 F.Supp.3d at 349 ("The reasoning in Tims is strained at best and, therefore, not persuasive."). Indeed, most courts have interpreted the safe provision as precluding liability for violations arising from the form notice takes but not from misleading or inaccurate content it includes. Walbridge , 299 F.Supp.3d at 349 ; Gunter v. United Federal Credit Union , 2017 WL 4274196, at *4 (D. Nev. Sept. 25, 2017) ; Pinkston-Poling v. Advia Credit Union , 2017 WL 5153218, at *2 (W.D. Mich. Apr. 20, 2017) ; Smith , 2017 WL 3597522, at *8 ; Walters v. Target Corp. , 2017 WL 3721433, at *5 (S.D. Cal. Feb. 14, 2017) ; Ramirez v. Baxter Credit Union , 2017 WL 118859, at *7 (N.D. Cal. Jan. 12, 2017) ; Berenson v. Nat'l Fin. Servs., LLC , 403 F.Supp.2d 133, 151 (D. Mass 2005). I agree that the reasoning in Tims is unpersuasive and hold that the safe harbor does not protect Defendant from liability in this case.
ii. Statute of Limitations
Individual and class actions for damages for failure to comply with the EFTA may be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. 1693m(g). According to Plaintiff, she was wrongly charged overdraft fees on December 18, 2014, December 19, 2014, and upon information and belief at least one other time within twelve months of filing her complaint on June 15, 2018.
1. Claims from June 15, 2017 to Present
Defendant contends that Plaintiff's claim accrued "as soon as the first fee [was] charged." (Docket No. 13 at 16). None of the Circuit Courts have directly addressed this issue. In Wike v. Vertrue, Inc. , 566 F.3d 590, 591-92 (6th Cir. 2009), a cardholder verbally preauthorized monthly charges to a debit card. The Sixth Circuit concluded that "the one-year limitations period began when the first recurring transfer took place." Id. at 593. All the transfers at issue in that case, however, were made within the one-year period. As a result, the court did not determine whether, had the first transfer been made outside that period, all claims based on later transfers would have been barred.
Some district courts have interpreted Wike to stand for the proposition that a pre-authorized transfer made outside of the one-year window bars all later claims. See, e.g., Repay v. Bank of Am, N.A. , 2013 WL 6224641, at *3 (N.D. Ill. Nov. 27, 2013) (concluding the first transfer "also triggers the limitations period for all ensuring transfers."); Harvey v. Google Inc. , 2015 WL 9268125, at *4 (N.D. Cal Dec. 21, 2015) (same). But see Diviacchi v. Affinion Grp., Inc. , 2015 WL 3631605, at *10 (D. Mass. March 11, 2015) (holding that each transfer "constitutes a new and independent violation" this is actionable if it falls within the one-year limitation period regardless of whether earlier transfers fell outside the window). Defendant relies heavily on the Wike progeny to argue that the clock on Plaintiff's claim began to run on December 18, 2014.
This case, however, is factually distinguishable from Wike and its progeny. In Smith v. Bank of Hawaii , the court "conclude[d] that Wike cannot logically be extended to the facts of this case, which involves allegedly unauthorized overdraft fees." 2018 WL 1662107, at *5 (D. Haw. Apr. 5, 2018) (emphasis in original). In the court's view:
The difference between preauthorizing a series of transfers and opting in to an overdraft services is both significant and meaningful. In the first instance, a consumer *92 gives express permission for a series of recurring transfers from his or her account. But in the second instance a consumer merely opts in to a service, perhaps with no intention of ever using it, and he or she does not agree to any specific fee or charge, let alone a series of them.
Id. ; see also Pingston-Poling v. Advia Credit Union , 333 F.Supp.3d 745, 749, 2018 WL 3758088, at *3 (W.D. Mich. Aug. 8, 2018) ("This Court agrees with the reasoning in Smith ... [that] overdraft fees constitute discrete harms that do not constitute a single transaction providing for recurring transfers.").
Indeed, Regulation E seems to contemplate that this distinction is a meaningful one. On the one hand, Regulation E requires preauthorized transfers to be in writing but only focuses on the authorization itself. 12 C.F.R. § 1005.10(b). On the other hand, with regard to overdraft services, the statute not only focuses on the requirements for opt-in provisions, but also prohibits "any fee or charge on the consumer's account for paying an ATM or one-time debit card transaction pursuant to the institution's overdraft service" without making the appropriate disclosures. 12 C.F.R. § 1005.17(c)(2). "Thus, the violation for purposes of determining the limitation period for a preauthorized transfer may properly be characterized as an omission. But when a bank assesses overdraft fees or charges, it violates the express language of Regulation E every time it imposes a fee or charge." Smith , 2018 WL 1662107, at *5. I find the Smith court's reasoning persuasive and therefore Defendant's reliance on Wike and its progeny is misplaced given the facts of this case.
Plaintiff alleges that on information and belief, "at least one such instance has occurred within twelve months of filing this complaint." Compl. ¶ 38. Therefore, Plaintiff's EFTA claims, insofar as they occurred within one year of filing her complaint are not time barred.
2. Claims before June 15, 2017
With regard to Plaintiff's claims under EFTA that occurred outside of the one-year window, Plaintiff contends that the discovery rule applies. While, "it is unclear whether the one-year statute of limitations of the EFTA incorporates a discovery rule," the First Circuit has not addressed the issue. Dorsey v. Enterprise Leasing , 78 F.Supp.3d 353, 357 (D.D.C. 2015). Plaintiff contends that it is likely that the First Circuit would find that the statute does incorporate the rule. See Skwira v. United States , 344 F.3d 64, 75 (1st Cir. 2003) ("lower federal courts 'generally apply a discovery rule when a statute is silent on the issue.' ") (quoting Rotella v. Wood , 528 U.S. 549, 555, 120 S.Ct. 1075, 145 L.Ed.2d 1047 (2000) ). Thus, I will assume that the discovery rule is available to Plaintiff here.
The "discovery rule allows a claim to accrue when the litigant first knows or with due diligence should know facts that will form the basis for an action." Randall v. Laconia, N.H. , 679 F.3d 1, 7 (1st Cir. 2012) (internal quotation marks omitted). Whether a litigant should have known is evaluated against the objective standard of what a "reasonable person similarly situated to the plaintiff would have known." McIntyre v. United States , 367 F.3d 38, 59 (1st Cir. 2004) (emphasis omitted). In order to apply, "the factual basis for the cause of action must have been inherently unknowable that is, not capable of detection through the exercise of reasonable diligence at the time of injury." Sanchez v. United States , 740 F.3d 47, 52 (1st Cir. 2014) (internal quotation marks omitted).
Plaintiff argues that this Court should not resolve whether the discovery rule applies *93 on this motion as it involves a fact-intensive inquiry. See Abdallah v. Bain Capital LLC , 880 F.Supp.2d 190, 198 (D. Mass. 2012) ("Although determining whether the discovery rule, fraudulent concealment, or equitable tolling should apply in a case is a question of fact to be determined by the finder of fact, the court can grant a motion to dismiss if no set of facts would entitle the plaintiff to relief."); In re Tyco Intern., Ltd. , 2004 WL 2348315, at *18 (D.N.H. Oct. 14, 2004) ("the discovery rule generally will not be resolvable on a motion to dismiss, unless it is plain from the complaint itself that the plaintiffs' claims are time-barred.").
While application of the discovery rule is often fact-intensive, here I find that the discovery rule does not apply as a matter of law. "In the context of EFTA claims ... the discovery rule [will often] not apply because a plaintiff could reasonably discover an injury by reviewing his bank statement or online account which would show that a fee or fees had been improperly assessed." Walbridge v. Northeast Credit Union , 299 F.Supp.3d 338, 351 (D.N.H. 2018) ; see also Harvey , 2015 WL 9268125, at *4 ("If Harvey had exercised due diligence, she should have discovered the injury either by looking at her Google account or even more simply, looking at her bank statements.").
Plaintiff claims that she could not have discovered the facts which form the basis of her claim because Defendant concealed its practice of using the "available balance" method from its customers. Plaintiff's argument is unpersuasive. Plaintiff alleges in her complaint that she was charged an overdraft fee when her account had a positive "ledger balance." Therefore, had Plaintiff checked her bank statements, she "should have known when [she] was charged [her] first overdraft on a positive ledger balance that [Defendant] was not using the ledger balance method to assess overdraft fees." Domann v. Summit Credit Union , 2018 WL 4374076, at *10 (W.D. Wis. Sept. 13, 2018). Accordingly, Plaintiff's claim was not inherently unknowable. Indeed, had she used reasonable diligence, she could have easily discovered the factual foundation of her claim. She is therefore not entitled to rely on the discovery rule for her EFTA claims that occurred more than one year before she filed her complaint.
Conclusion
For the reasons stated above, Defendants motion (Docket No. 12) is granted in part and denied in part. Claims IV and V are dismissed. Claims I, II, and III survive Defendant's motion to dismiss. Finally, Claim VI survives Defendant's motion only for claims that occurred on or after June 15, 2017.
SO ORDERED